HUTCHINSON, APPELLANT AND CROSS-APPELLEE, *v.* J. C. PENNEY CASUALTY INSURANCE COMPANY, APPELLEE AND CROSS-APPELLANT.

[Cite as Hutchinson *v.* J.C. Penney Cas. Ins. Co. (1985), 17 Ohio St. 3d 195.]

(No. 84-534—Decided June 5, 1985.)

*Isaac, Brant, Ledman & Becker, Charles E. Brant* and *J. Stephen Teetor,* for appellant and cross-appellee.

*Denmead, Gerrity & Tsitouris* and *Chris C. Tsitouris,* for appellee and cross-appellant.

SWEENEY, J. The instant cause presents a question of first impression before this court in which we must decide whether punitive damages and reasonable attorney fees are recoverable by the plaintiff under the uninsured motorist provisions of her father's insurance policies. The uninsured motorist provisions each provide as follows:

"We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person and caused by an accident. * * *"

The defendant insurance company contends on cross-appeal that the foregoing provision allows coverage solely for compensatory damages, and cannot be construed to encompass an award for exemplary damages and attorney fees. In support of its argument defendant submits that Ohio adheres strictly to the punishment theory of punitive damages as evidenced by this court's prior rulings in *Roberts* v. *Mason* (1859), 10 Ohio St. 277; *Saberton* v. *Greenwald* (1946), 146 Ohio St. 414 [32 O.O. 454]; and *Detling* v. *Chockley* (1982), 70 Ohio St. 2d 134 [24 O.O.3d 239]. The defendant asserts that the sanctioning of punitive damages in the instant cause will thwart the central purposes of punishment and deterrence that these types of damages were designed to foster.

The plaintiff counters that the defendant undertook to indemnify her for those damages that she would be legally entitled to recover if she were to sue the tortfeasor directly in a bodily injury action. Plaintiff argues that the subject uninsured motorist provision does not exclude other types of damages, except property damages, and that a liberal construction of this ambiguous provision necessarily permits the recovery of punitive damages in a proper case, inasmuch as the subject provision is not qualified in a manner that expressly excludes such damages. Plaintiff submits that approximately thirty-five jurisdictions around the country have allowed the recovery of punitive damages under various insurance policies; see, *e.g.*, *Hensley* v. *Erie Ins. Co.* (W. Va. 1981), 283 S.E. 2d 227; see, also, Annotation (1982), 16 A.L.R. 4th 11; and that the rationale for allowing punitive damages is much stronger with respect to an uninsured motorist clause, given the fact that this court has interpreted uninsured motorist coverage to be a much broader form of coverage than that found in an ordinary liability policy. See *Kish* v. *Central Natl. Ins. Group* (1981), 67 Ohio St. 2d 41 [21 O.O.3d 26], where we held, *inter alia,* that an uninsured motorist provision extends to injuries which were intentionally inflicted by an uninsured motorist.

In determining the scope of the subject uninsured motorist provision, one can readily ascertain the plausibility of the arguments advanced by both parties with respect to the recoverability of exemplary or punitive damages. However, given the nature of the provision in issue, our interpretation is guided by that central canon of insurance contract construction which states that "[l]anguage in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." *Buckeye Union Ins. Co.* v. *Price* (1974), 39 Ohio St. 2d 95 [68 O.O.2d 56]; see, also, *Ohio Farmers Ins. Co.* v. *Wright* (1969), 17 Ohio St. 2d 73 [46 O.O.2d 404]; *Gomolka* v. *State Auto. Mut. Ins. Co.* (1984), 15 Ohio St. 3d 27; and 57 Ohio Jurisprudence 3d (1985) 348, Insurance, Section 285.

Based on the arguments submitted by both parties, we are persuaded that the uninsured motorist provision in issue is reasonably susceptible to differing interpretations, and that, therefore, a liberal construction of this provision in plaintiff's favor is necessary.

In applying the principles of liberal construction to the subject uninsured motorist provision, we find plaintiff's arguments to be well-taken in that punitive damages are the type of damages which a party would be legally entitled to recover from an uninsured motorist where the facts and circumstances of the particular case warrant such an award. By structuring the language of the uninsured motorist provision as it did, the defendant insurance company has agreed to subrogate itself into the position of the uninsured motorist tortfeasor. Since the subject provision is not limited or qualified so as to clearly prohibit an award of punitive damages, it is logical and reasonable to assume that punitive damages could be proper in an appropriate case as a consequence of a bodily injury accident. Thus, in a proper case, such as the one *sub judice,* and given the language employed in the subject provision, we find that the defendant has contractually agreed to stand in the shoes of the tortfeasor and pay those damages which the insured would have been able to recover from the uninsured motorist as if she had sued the uninsured motorist herself. Such an interpretation is consonant with the reasoning enunciated in *Kish, supra.* Moreover, the punishment or deterrent effect of punitive damages is not ignored under this analysis, since the defendant insurance company may subrogate and bring an action against the tortfeasor for the full measure of damages that it agreed to indemnify plaintiff, its insured.

Therefore, we hold that as a matter of public policy, and in the absence of specific contractual language to the contrary, punitive or exemplary damages may be awarded to an insured under an uninsured motorist provision, where the issuer of the policy promises to pay damages for which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person and caused by an accident.

Such an approach is not novel in the state of Ohio as evidenced by the court's holding in *Cuppett* v. *Grange Mut. Co.* (1983), 12 Ohio App. 3d 82. Accordingly, we affirm the decision of the court of appeals that punitive damages are recoverable under the uninsured motorist provision in the subject policies.

Having decided that punitive damages could be properly awarded in the instant cause, the next issue presented will determine whether the court of appeals was correct in remanding the determination of the amount of punitive damages to the trial court. This second issue asks us whether the arbitration award was limited to the amount demanded by the complaining party.

The defendant submits that the policies in question provide with respect to arbitration that "[l]ocal rules of law as to procedure and

evidence will apply." It is the defendant's contention that since the policies herein incorporate the local rules of procedure in the binding arbitration clause, the plaintiff is limited pursuant to Civ. R. 54(C) to the amount requested in her original demand for arbitration, since her amended amount demand was proffered only six days prior to the arbitration hearing.[1]

The plaintiff argues that the appellate court erred in remanding the case to the trial court and should have instead reinstated the arbitration award. Plaintiff maintains that Civ. R. 54(C) has no application to arbitration proceedings, and that defendant's position would inhibit realistic settlement negotiations.

Civ. R. 54(C) provides in relevant part:

"* * * [A] demand for judgment which seeks a judgment for money shall limit the claimant to the sum claimed in the demand unless he amends his demand not later than seven days before the commencement of the trial. * * *"

In order for this rule to have any application by its terms, there must be "a demand for judgment which seeks a judgment for money." Plaintiff's letters to counsel for the defendant demanding a certain amount in settlement of the claim should not be considered the type of demand contemplated under Civ. R. 54(C). The type of demand envisioned by Civ. R. 54(C) is that made in a civil complaint seeking judgment from the court. The instant case does not contain a complaint or judgment demand as suggested by the Civil Rules. If we were to adopt the position advanced by the defendant, we believe that such a course could very well result in unrealistic settlement negotiations. While the defendant is correct in maintaining that the parties agreed to apply local rules of procedure, and that such rules are indeed binding in the instant arbitration, we find that Civ. R. 54(C) does not have any effect on the amount of the arbitration award. It follows, therefore, that the appellate court erred in vacating the arbitration award and remanding the cause to the trial court on that issue in light of Civ. R. 54(C). Thus, we reverse the decision of the court of appeals in remanding the cause to the trial court on this issue, and we reinstate the amount of punitive damages awarded by the arbitration panel.

---

[1] The briefs filed in the trial court indicate that plaintiff's counsel directed a letter to defendant dated September 8, 1980 stating:

"* * * Our demand for the purpose of arbitration is $27,000.00 compensatory damages and $25,000.00 exemplary damages and attorneys' fees."

Prior to the arbitration hearing, another letter was directed by plaintiff's counsel to defendant stating: "* * * [A]ll previous demands of record are withdrawn. Present claim for payment is $120,000.00."

It should be noted that this correspondence is not included in the record compiled at the arbitration level; however, we have included it here simply for the sake of factually understanding the issue presented.

Directing our attention to the issue of attorney fees, we note that it has long been a basic tenet of Ohio law that "[i]f punitive damages are proper, the aggrieved party may also recover reasonable attorney fees." *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178, at 183 [71 O.O.2d 174]; *Locafrance United States Corp.* v. *Interstate Dist. Serv., Inc.* (1983), 6 Ohio St. 3d 198, at 202. Nevertheless, our inquiry turns to whether the court of appeals correctly remanded the cause to the trial court for a determination of attorney fees.

The plaintiff argues that the award of attorney fees by the arbitration panel appropriately reflects the agreement made between plaintiff and her counsel that plaintiff's attorney would receive one-third of all damages recovered. Plaintiff further contends that the defendant never objected to the admission of the fee arrangement.

The defendant contends that the arbitration award of attorney fees is not supported by the record since only plaintiff's counsel's statement related to attorney fees and the written confirmation of the contingent fee agreement was submitted after the arbitration hearing and without the knowledge of defendant.

Our review of the record in this cause leads us to conclude that the determination of the amount of reasonable attorney fees should be remanded to the trial court for further proceedings. The record before us reveals a dearth of evidence concerning the proper measure of attorney fees that can be awarded to plaintiff. What little evidence there is concerning the appropriate amount that should be awarded as attorney fees is in our view conflicting and incomplete. Accordingly, we affirm the decision of the court of appeals in remanding the determination of attorney fees to the trial court. Upon remand, the trial court is directed to consider the factors we set forth in *State, ex rel. Montrie Nursing Home, Inc.*, v. *Creasy* (1983), 5 Ohio St. 3d 124, in calculating the amount of reasonable attorney fees that should be awarded the plaintiff. These factors include: "* * * (1) the time and labor involved in maintaining this litigation, (2) the novelty, complexity, and difficulty of the questions involved, (3) the professional skill required to perform the necessary legal services, (4) the experience, reputation, and ability of the attorneys, and (5) the miscellaneous expenses of this litigation." *Id.* at 128.

Therefore, for the reasons expressed herein, the judgment of the court of appeals is reversed in part and affirmed in part, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment accordingly.*

CELEBREZZE, C.J., C. BROWN and DOUGLAS, JJ., concur.

LOCHER, J., dissents separately.

HOLMES and WRIGHT, JJ., dissent separately.

LOCHER, J., dissenting. I join in the dissenting opinion of Justice Wright except for the last full paragraph thereof.

WRIGHT, J., dissenting. Today the majority has forged a truly remarkable path in the development of insurance law. Historically, in this state and in the vast majority of our sister jurisdictions, punitive or exemplary damages have been awarded for two purposes: punishment of the wrongdoer and deterrence of future egregious conduct. *Roberts* v. *Mason* (1859), 10 Ohio St. 277, 280; *Saberton* v. *Greenwald* (1946), 146 Ohio St. 414, 424 [32 O.O. 454]; *Detling* v. *Chockley* (1982), 70 Ohio St. 2d 134, 136 [24 O.O.3d 239]; 22 American Jurisprudence 2d (1965) 323, Damages, Section 237. Such damages were *not* intended to serve as a form of reward to the person wronged. Unfortunately, the majority has ignored the well-founded rationale underlying punitive damages and instead has provided an enhanced reward to an adequately compensated party solely for reward's sake.

In support of its position, the majority states: "Plaintiff submits that approximately thirty-five jurisdictions around the country have allowed the recovery of punitive damages under various insurance policies." The majority then attempts to buttress this statement by citing Annotation (1982), 16 A.L.R. 4th 11. This quoted passage, even if accepted as accurate, which it is *not*, pertains only to *liability insurance policies.* In fact, liability insurance is precisely — and solely — the type of insurance scrutinized by this annotation. Unfortunately, the majority fails to note that the case at bar involves an *uninsured motorist provision* of an automobile insurance policy. The annotation expressly defines its scope and makes manifestly clear the distinction between these types of insurance coverage. The annotation states:

"As used herein, the term 'liability insurance' means a policy or contract of insurance whereby the insurer agrees to protect the insured against liability arising from an act or omission of the insured which causes injury to the person or property of a third person, the liability of the insurer attaching upon the determination that the insured is liable for such act or omission. * * * *Thus, this annotation does not consider coverage of punitive or exemplary damages under an uninsured motorist provision of an automobile insurance policy,* which provision is generally designed to protect an insured who is himself injured through the fault of another." (Emphasis added.) *Id.* at 14, fn. 2.

Thus, the cited authority is inapposite to the situation existing in the present case. In light of this consideration, it becomes apparent that the majority is unable to cite *any* cases which provide for the recovery of punitive damages against an insurer pursuant to the uninsured motorist provision of an insurance policy.

Furthermore, assuming *arguendo* that the annotation is at least somewhat pertinent, the majority conveniently ignores the fact that the courts are actually evenly divided regarding the issue of recovering

punitive damages under liability insurance policies. According to my reading of the annotation, exemplary damages are most typically awarded where the language of the insurance policy can be reasonably construed to envision such recovery. This is certainly not true of the policy language in the present case. In a great many cases involving policy language effectively identical to the language existing herein, recovery of punitive damages against the insurer was denied. See, *e.g., Universal Indemn. Ins. Co.* v. *Tenery* (1934), 96 Colo. 10, 39 P. 2d 776; *Ging* v. *American Liberty Ins. Co.* (N.D. Fla. 1968), 293 F. Supp. 756, reversed on other grounds (C.A.. 5, 1970), 423 F. 2d 115; *Crull* v. *Gleb* (Mo. App. 1964), 382 S.W. 2d 17; *Nationwide Mut. Ins. Co.* v. *Knight* (1977), 34 N.C. App. 96, 237 S.E. 2d 341.

The majority also cites *Kish* v. *Central Natl. Ins. Group* (1981), 67 Ohio St. 2d 41 [21 O.O.3d 26], for the proposition that "an uninsured motorist provision extends to injuries which were intentionally inflicted by an uninsured motorist." That is all well and good except that *Kish* involved essentially the availability of *compensatory,* and not punitive, damages. Thus, *Kish* lends no support to the majority's position.

The entire majority opinion is premised primarily upon a very liberal interpretation of the relevant insurance policy language. This argument is also untenable. The insurance policy in this case states, in pertinent part, that the insurer "will pay *damages* which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle *because of bodily injury* sustained by a covered person and caused by an accident. * * *" (Emphasis added.)

The express terms of the policy provide that an insurer's liability is limited to damages for *bodily injury* only. Thus, an insured may recover only compensatory damages. Yet, the majority somehow has construed this provision to include *all* damages which might be granted at trial as between the wrongdoer and the aggrieved party. I have no quarrel with the fact that the injured party was entitled to punitive damages as against the *wrongdoer* under the facts of this case. However, the logic of punishing the J. C. Penney Casualty Insurance Company by means of an award of exemplary damages escapes me.

Finally, the majority opinion sadly neglects well-reasoned public policy considerations. Indeed, coverage for exemplary damages is generally regarded as contrary to sound public policy. The criteria by which an insurance contract is tested for public policy considerations was articulated thusly in *Solo Cup Co.* v. *Federal Ins. Co.* (C.A. 7, 1980), 619 F. 2d 1178, 1187, and *L'Orange* v. *Med. Protective Co.* (C.A. 6, 1968), 394 F. 2d 57, 60: "[T]he violation of public policy is measured by the tendency of the contract to injure the public good rather than the actual injury under the particular circumstances." The present insurance policy, as construed by the majority to allow for punitive damages, fails to satisfy this test. The allowance of punitive damages can only inure to the detriment of the

public in the form of higher insurance premiums and economically debilitated insurers. Surely this greater injury to the economic interests of society outweighs the interests of an injured, though adequately compensated, party.

Until today, this court has not addressed whether punitive damages are insurable, although at least two Ohio appellate courts have considered the issue and decided that as a matter of public policy, liability against punitive damages is not insurable. See *Willowick Towers Invest. Co.* v. *General Ins. Co.* (Sept. 22, 1980), Lake App. No. 7-239, unreported; and *Troyer* v. *Horvath* (Nov. 3, 1983), Cuyahoga App. No. 46530, unreported. A survey of those states which have addressed the public policy concerns underlying this issue leads to two conclusions:

(1) Where punitive damages are awarded as punishment rather than as an element of damages, the punitives will not be insurable as a matter of public policy; and

(2) punitive damages will not be insurable where the insured had a specific intent to cause the injuries.

As previously noted, Ohio law has long been clear as to the public policy rationale supporting the award of punitive damages: punishment of the wrongdoer and deterrence. *Roberts* v. *Mason, supra; Saberton* v. *Greenwald, supra; Detling* v. *Chockley, supra.* Until these cases are overruled and the public policy considerations upon which they are based are somehow changed to require the punishment of an innocent third party, today's decision is indefensible and simply cannot be reconciled.

In sum, I am truly disheartened by the result reached in this case since it has no foundation in law, public policy, or reason. The more one attempts to explain the result, the less one is able to understand it. The result reached today lends credence to the charge that the insurance industry has been targeted for punishment.

Accordingly, I must dissent.

HOLMES, J., concurs in the foregoing dissenting opinion.