STATE FARM MUTUAL INSURANCE COMPANY, APPELLEE, *v.*
BLEVINS ET AL., APPELLANTS.

[Cite as State Farm Mut. Ins. Co. *v.* Blevins (1990), 49 Ohio St. 3d 165.]

(No. 88-1664—Submitted November 7, 1989—Decided March 7, 1990.)

Rea Co., L.P.A., Henry A. Hentemann, Joseph H. Wantz, Cash, Cash, Eagen & Kessel and Melvin J. Kessel, for appellee.

Casper & Casper, S. Robert Casper and Bruce P. Gudenkauf, for appellants.

H. BROWN, J. This case presents two issues. First, what is the scope of the arbitrators' power to award damages under the insurance contract? Second, did the arbitrators exceed their power by awarding punitive damages?

## I

The power of Ohio courts to review an arbitration is defined by R.C. 2711.10, which states:

"In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:

"* * *

"(D) *The arbitrators exceeded their powers,* or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." (Emphasis added.)

We have held that "R.C. 2711.10 limits judicial review of arbitration to claims of fraud, corruption, misconduct, an imperfect award, or that the arbitrator exceeded his authority." *Goodyear Tire & Rubber Co.* v. *Rubber Workers Local 200* (1975), 42 Ohio St.

*Meyers, Hentemann, Schneider &*

2d 516, 71 O.O. 2d 509, 330 N.E. 2d 703, paragraph two of the syllabus.

In the case before us, appellee claims that the arbitrators exceeded their powers by awarding punitive damages. An arbitrator's powers are "limited by the bounds of the agreement from which he draws his authority." *Internatl. Bhd. of Electrical Workers, Local 1400* v. *Citizen's Gas & Coke Utility* (Ind. App. 1981), 428 N.E. 2d 1320, 1326. The arbitrator has no authority to decide issues which, under their agreement, the parties did not submit to review. Our task is to determine whether the insurance policy, which is the contract between the parties, grants the power to award punitive damages.

## II

The issue of whether uninsured motorist coverage (required by R.C. 3937.18) extends to punitive damages was considered in *Hutchinson* v. *J.C. Penney Cas. Ins. Co.* (1985), 17 Ohio St. 3d 195, 17 OBR 432, 478 N.E. 2d 1000. We begin our discussion with a review of that case.

In *Hutchinson* the insurance policy covered "damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle *because of* bodily injury * * *." (Emphasis added.) *Id.* at 197, 17 OBR at 434, 478 N.E. 2d at 1002. An arbitration panel awarded the plaintiff compensatory and punitive damages for injuries caused by an uninsured motorist, and the defendant insurer applied for an order vacating the award on the ground that the arbitrators exceeded their powers. *Id.* at 196, 17 OBR at 433, 478 N.E. 2d at 1001-1002.

This court found that the uninsured motorist provision at issue was ambiguous, and should be construed liberally in favor of the plaintiff. *Id.* at 198, 17 OBR at 434, 478 N.E. 2d at 1003. Applying principles of liberal construction, we found "that punitive damages are the type of damages which a party would be legally entitled to recover from an uninsured motorist where the facts and circumstances of the particular case warrant such an award. By structuring the language of the uninsured motorist provision as it did, the defendant insurance company has agreed * * * to stand in the shoes of the tortfeasor and pay those damages which the insured would have been able to recover * * * if she had sued the uninsured motorist herself." *Id.* at 198, 17 OBR at 435, 478 N.E. 2d at 1003. Accordingly, we held that "[a]s a matter of public policy, and in the absence of specific contractual language to the contrary, punitive or exemplary damages may be awarded to an insured under an uninsured motorist provision, where the issuer of the policy agrees to pay damages * * * which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person and caused by an accident." *Id.* at paragraph two of the syllabus.

The policy interpretation made in *Hutchinson* was controversial.[3] The dissent argued that our holding "ignored the well-founded rationale underlying punitive damages and instead

---

[3] The law review commentaries sharply criticized the decision. See Recent Case, Uninsured Motorist Insurance Now Covers Punitive Award (1985), 19 Akron L. Rev. 325, 336 (*Hutchinson* "reached a bizarre result"); Comment, Ohio's Uninsured Motorist Coverage — Should the Legislature Re-Examine the Statute? (1986), 15 Cap. U. L. Rev. 325 (advocating legislative action to reverse *Hutchinson*).

* * * provided an enhanced reward to an adequately compensated party solely for reward's sake." *Id.* at 201, 17 OBR at 437, 478 N.E. 2d at 1005.

The purpose of punitive damages is to punish the offending party and make the offender an example to others so that they might be deterred from similar conduct. *Detling* v. *Chockley* (1982), 70 Ohio St. 2d 134, 24 O.O. 3d 239, 436 N.E. 2d 208. In accord with this purpose, Ohio law has long disfavored insurance against punitive damages resulting from the insured's own torts. *Casey* v. *Casey* (1987), 40 Ohio App. 3d 83, 531 N.E. 2d 1348; *Willowick Towers Investment Co.* v. *General Ins. Co. of America* (Sept. 22, 1980), Lake App. No. 7-239, unreported; *Troyer* v. *Horvath* (1983), 13 Ohio App. 3d 155, 13 OBR 189, 468 N.E. 2d 351; see, also, Prosser & Keeton, Law of Torts (5 Ed. 1984) 13, Section 2 (purpose of punitive damages would be frustrated by permitting insurance to indemnify the wrongdoer).

However, uninsured motorist coverage insures against the tortious acts and financial irresponsibility of persons other than the insured. See, generally, Woodroof, Fonseca & Squillante, Automobile Insurance and No-Fault Law (1974) 186-187, Section 7.1-7.3. Thus, the policy against insulating the tortfeasor from the consequences of his wrongful acts is not violated by our holding in *Hutchinson.*

The *Hutchinson* court reasoned that the deterrent effect of punitive damages was preserved because "the defendant insurance company may subrogate and bring an action against the tortfeasor for the full measure of damages that it agreed to indemnify plaintiff, its insured." *Hutchinson, supra,* at 198, 17 OBR at 435, 478 N.E. 2d at 1003. While this is true in theory, the economic reality is that many uninsured motorists are judgment-proof. Thus the insurer will often not recover punitive damages from the tortfeasor. More likely, the insurer will raise premiums and pass the loss on to financially responsible consumers. Comment, Ohio's Uninsured Motorist Coverage — Should the Legislature Re-examine the Statute? (1986), 15 Cap. U. L. Rev. 325, 340-341; Note, Uninsured Motorist Insurance Now Covers Punitive Award — *Hutchinson* v. *J.C. Penney Casualty Insurance Company* (1985), 19 Akron U. L. Rev. 325, 332. The practical effect is to "punish" the wrong party.

We find no reason to conscript insurers into an unwitting commitment to provide coverage for punitive damages. Yet that is what the *Hutchinson* holding does. Accordingly, we overrule the second paragraph of the syllabus in *Hutchinson* and hold that in the absence of specific contractual language, coverage for punitive or exemplary damages will not be presumed under a provision for uninsured motorist coverage. Because of this holding, we need not consider whether the retroactive application of the post-*Hutchinson* amendments to R.C. 3937.18 is unconstitutional.[4]

---

[4] In response to *Hutchinson,* see Comment, *supra,* at 325, the General Assembly passed Am. S.B. No. 249 (141 Ohio Laws, Part I, 249), effective October 14, 1986. The Act added a new division (I) to R.C. 3937.18, the uninsured motorist statute, which read:

"Coverages written under division (A) of this section do not include the payment of punitive damages."

Section 3 of the Act made the amendment expressly retroactive:

"The General Assembly hereby declares that in * * * [the most recent amendment of R.C. 3937.18 prior to *Hutchinson*] it was assumed that the legal principles op-

## III

Our final task is to examine the policy at issue to determine whether the arbitrators had the power to award punitive damages. The uninsured motorist provision of the policy promises to pay damages "for bodily injury." This provision clearly limits the insurer's liability to compensatory damages for personal injury. It is not a contractual undertaking to insure against punitive damages. Further, the phrase "for bodily injury" is narrower than the language "because of bodily injury" at issue in *Hutchinson*. Under no construction can the language "for bodily injury" be read to include punitive damages. Punitive damages are not awarded for bodily injury. Hence, even under the *Hutchinson* rule, punitive damages would not be covered.

The only damages which the arbitrators had the power to award were those covered by the insurance policy. The policy coverage is limited to compensatory damages "for bodily injury." Accordingly, we hold that the arbitrators exceeded their power when they made an award for punitive damages.

The judgment of the court below is affirmed.

*Judgment affirmed.*

MOYER, C.J., HOLMES, WRIGHT and RESNICK, JJ., concur.

SWEENEY, J., dissents.

DOUGLAS, J., dissents without opinion.

SWEENEY, J., dissenting. While I can find no problem with the statement of law enunciated in paragraph one of the syllabus, I must vigorously dissent from the majority's unnecessary and result-oriented decision to overrule the sound analysis and legal policy announced in *Hutchinson* v. *J.C. Penney Cas. Ins. Co.* (1985), 17 Ohio St. 3d 195, 17 OBR 432, 478 N.E. 2d 1000.

The majority of this court has taken a decidedly anti-consumer approach to the law by overruling this court's decision in *Hutchinson*. By its opinion today, the majority has taken the ambiguous language of the policy written by the insurance company and construed such language in favor of the insurer and against the insured, who dutifully paid premiums for the uninsured motorist coverage in issue. Such an approach flies in the face of the well-established rule of construction to be employed in insurance con-

---

posed to authorization for insurance that would indemnify a person for conduct leading to the award of punitive damages were so well established that it was unnecessary to negate such an intention. Such being the case, no claim for punitive damages under coverage written pursuant to section 3937.18 of the Revised Code shall be paid after the effective date of this act unless a judgment to that effect had been rendered prior to such effective date and is no longer subject to the determination of an appeal after such date."

The General Assembly amended the statute again, after the arbitral award was

rendered in the instant case, but while it was still pending in the court of appeals. H.B. No. 1, effective January 5, 1988, replaced R.C. 3937.18(I) with R.C. 3937.182 (B), which provides:

"No policy of automobile or motor vehicle insurance that is covered by sections 3937.01 to 3937.17 of the Revised Code, including, but not limited to, the uninsured and underinsured motorists coverage in such a policy as required by section 3937.18 of the Revised Code, * * * shall provide coverage for judgments or claims against an insured for punitive or exemplary damages."

tract cases, *viz.*, that "[l]anguage in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." *Faruque* v. *Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St. 3d 34, 31 OBR 83, 508 N.E. 2d 949, syllabus.

In my view, the reasoning employed in the *Hutchinson* opinion is just as valid today as it was on the date it was decided:

"In applying the principles of liberal construction to the subject uninsured motorist provision, we find plaintiff's arguments to be well-taken in that punitive damages are the type of damages which a party would be legally entitled to recover from an uninsured motorist where the facts and circumstances of the particular case warrant such an award. By structuring the language of the uninsured motorist provision as it did, the defendant insurance company has agreed to subrogate itself into the position of the uninsured motorist tortfeasor. Since the subject provision is not limited or qualified so as to clearly prohibit an award of punitive damages, it is logical and reasonable to assume that punitive damages could be proper in an appropriate case as a consequence of a bodily injury accident. Thus, in a proper case, such as the one *sub judice*, and given the language employed in the subject provision, we find that the defendant has contractually agreed to stand in the shoes of the tortfeasor and pay those damages which the insured would have been able to recover from the uninsured motorist as if she had sued the uninsured motorist herself. Such an interpretation is consonant with the reasoning enunciated in *Kish* [v. *Central Natl. Ins. Group of Omaha* (1981), 67 Ohio St. 2d 41, 21 O.O. 3d 26, 424 N.E. 2d 288], *supra.* Moreover, the punishment or deterrent effect of punitive damages is not ignored under this analysis, since the defendant insurance company may subrogate and bring an action against the tortfeasor for the full measure of damages that it agreed to indemnify plaintiff, its insured.

"Therefore, we hold that as a matter of public policy, and in the absence of specific contractual language to the contrary, punitive or exemplary damages may be awarded to an insured under an uninsured motorist provision, where the issuer of the policy promises to pay damages for which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person and caused by an accident." *Hutchinson, supra,* at 198, 17 OBR at 435, 478 N.E. 2d at 1003.

As the passages above indicate, an award of punitive damages is specifically limited to only those cases where such damages would be appropriate where the insured would have been able to recover punitive damages from the uninsured motorist as if the insured had directly sued the uninsured tortfeasor. In addition, the *Hutchinson* opinion stated that insurers could insulate themselves from paying such damages under uninsured motorist provisions by simply stating that exemplary or punitive damages would be excepted from the catchall term of "damages." Thus, if punitive damages could be paid only under the rarest of circumstances, especially since state law requires financial responsibility for all vehicle owners, one can only wonder why the majority would feel compelled to overrule *Hutchinson* with such unsettling zeal. The issue presented here is simply an issue of contract construction under an uninsured motorist clause where the terms employed are not defined in the policy

itself. If the insurer uses vague or ambiguous contractual terms that are susceptible to more than one interpretation, as it has here, then the insurer, as drafter of such language, should be subject to the liberal construction that must occur when such vague or ambiguous terms are employed. *Faruque, supra.* However, to deny the insured, who paid premiums for such coverage, the full benefit of damages that he would be legally entitled to recover from the tortfeasor/uninsured motorist, is to turn the rubric of liberal construction in contract cases completely around.

While those in the majority may vehemently deny their convenient discard of the liberal construction standard, this is precisely what they have done here.

Turning to the supposed rationale employed by the present majority, its first reason to overrule *Hutchinson* boils down to the premise that the decision rendered by this court in *Hutchinson* was "controversial." The majority proceeds to cite two law student-authored comments or case notes as some type of proof that the *Hutchinson* holding was incorrect.[5]

If controversy, however, is a

---

[5] The majority refers to, and apparently relies on, the two student-authored comments or case notes in at least two different parts of its opinion. However, such reliance is questionable, especially on the one comment that concludes: "The *Hutchinson* court did suggest in *dictum* that an insurer could specifically exclude a punitive damages award from coverage." Comment, Ohio's Uninsured Motorist Coverage — Should the Legislature Re-Examine the Statute? (1986), 15 Cap. U.L. Rev. 325, at 345.

Apparently, the student author is unable to discern the difference between *dictum* and the syllabus law of a case enunciated by this court. Paragraph two of the syllabus in *Hutchinson* clearly provides: "As a matter of public policy, *and in the absence of specific contractual language to the contrary,* punitive or exemplary damages may be awarded to an insured under an uninsured motorist provision * * *." (Emphasis added.)

In addition, both the law review comment and case notes, directly or indirectly, assail this court in *Hutchinson, supra,* for relying on an A.L.R. annotation that analyzed punitive damages in liability policies. The articles then essentially intimate that the *Hutchinson* majority did not review the annotation at all since the annotation stated in a footnote that its scope did not encompass uninsured motorist policies.

However, I direct the majority (and for that matter, the student authors) to review the context and language of *Hutchinson* that stated: *"Plaintiff submits* that approximately thirty-five jurisdictions around the country have allowed the recovery of punitive damages *under various insurance policies;* see, *e.g., Hensley* v. *Erie Ins. Co.* (W. Va. 1981), 283 S.E. 2d 227; see, also, Annotation (1982), 16 A.L.R. 4th 11; *and that the rationale for allowing punitive damages is much stronger with respect to an uninsured motorist clause * * *."* (Emphasis added.) *Hutchinson, supra,* at 197, 17 OBR at 434, 478 N.E. 2d at 1002.

The foregoing language, *inter alia,* clearly indicates first, that this court was merely setting forth one of the arguments of the plaintiff; and second, that the plaintiff in *Hutchinson* never argued that thirty-five jurisdictions permit punitive damages recovery under uninsured motorist coverage, but that the rationale for punitive damages was more worthy for consideration under uninsured motorist provisions than under other various liability policies where a punitive damage recovery was in fact permitted.

Given such fundamental errors in the student authors' knowledge, comprehension and analysis, one wonders why the instant majority would want to risk its credibility by placing its imprimatur on law review comments or case notes that are of limited or no persuasive value.

legitimate basis for overruling sound legal precedent, then the majority seems to have inequitably embraced a result-oriented doctrine.

The majority herein then proceeds to assert a curious argument that the overruling of *Hutchinson* will somehow assist financially responsible consumers. In my view, such reasoning is flawed, and even somewhat disingenuous. The majority supposes, without one shred of empirical evidence, that the *Hutchinson* rationale "will raise premiums and pass the loss on to financially responsible consumers." This argument is nothing more than a "red herring." A much deeper analysis, which unfortunately the majority is either unable or unwilling to engage in, will reveal that if the insurer would pay its insured that which it promised to pay under the insurance contract, instead of untold thousands of dollars in attorney fees and other litigation costs to fight the type of rare claims such as the instant one, then perhaps "financially responsible consumers" will not be eventually saddled with the losses incurred on account of the theoretical "judgment-proof" tortfeasor the majority bemoans.

As intimated before, the convenient and simple solution for insurers to insulate themselves from those rare circumstances where *Hutchinson* would be invoked is to draft insurance language in a plain and comprehensible manner that would indicate that punitive damages will not be paid under particular circumstances. If the majority were truly as consumer-conscious as it professes to be, it would not permit insurers, such as the one here and in *Hutchinson,* to impose vague and ambiguous language on consumers with contractual terms that even a collection of eminent legal scholars could not agree on with precision.

Regrettably, the majority resorts to judicial legislation in order to protect not consumers, but drafters of insurance contracts who possess the wherewithal to avoid the rare circumstances as found here and in *Hutchinson, supra,* where punitive damages may be proper. The liberal construction rule of law has become hollow indeed, since here the majority has acknowledged that it will rescue inartfully drafted insurance contract language by imposing a presumption of non-recoverability in favor of the insurer who falls prey to such nebulous drafting.

In any event, based on the sound public policy and legal principles employed in *Hutchinson, supra,* I would reverse the decision of the court of appeals below, which also attempted to unconstitutionally apply R.C. 3937.18(I) in order to retroactively impair an insurance contract obligation.