OPINION
Defendant-appellant Marcia Wolk appeals the decision of the Mahoning County Common Pleas Court, Probate Division, which removed her as the custodian of plaintiff-appellee Joshua Wolk's custodial account. For the following reasons, appellant's first, third and fourth assignments of error are overruled; however, appellant's second assignment of error, dealing with the amount of attorney fees, is reversed and that issue is remanded for further proceedings.
 STATEMENT OF FACTS
Joshua was born on August 5, 1980. In early 1996, Joshua became the beneficiary of a custodial account created under the Ohio Transfers to Minors Act, R.C. 1339.31 et seq.[1] The account consisted of approximately $20,000 in Coca-Cola stock. Mrs. Wolk, who is Joshua's aunt through marriage, was named the custodian of the account.[2]
In August 1997, Mrs. Wolk sold stock from the custodial account to pay for Johsua's senior year tuition at Cardinal Mooney High School. (Tr. 146). When Mrs. Wolk called the school to find out why Joshua's senior year was more than the prior year, which she had paid for as a gift out of her separate assets, she was informed about graduation fees. Collaterally, she was upset to learn that financial aid was an option but that Joshua's father had failed to apply. (Tr. 153, 154, 191). Due to this and due to her claim that the account was established for college rather than high school expenses, she decided that she would not pay the tuition with the funds received from the sale of custodial stocks. Instead, she deposited those funds into an account belonging to the estate of Sally Finklestein for which she was the fiduciary and beneficiary. (Tr. 149). She admitted that she did this to reimburse herself for past tuition gifts made to Joshua. Ultimately, she returned the money to the custodial account.
On November 10, 1997, Joshua filed a petition with the probate court requesting $3,325 from the custodial account for tuition and graduation fees. He also asked for an accounting and urged that his aunt be removed as custodian of the account. The case was tried on April 28, 1998. Joshua filed a motion for attorney fees on May 15, 1998. The court released a judgment entry on May 28, 1998 sustaining the petition in all respects. The court found that Mrs. Wolk acted capriciously, willfully, in bad faith, and contrary to Joshua's best interests in refusing to pay his tuition, in diverting his funds to her account, and then in delaying the return of these funds. The court ordered Mrs. Wolk to amend her accounting to reflect lost dividends, fees and commissions charged and other losses that resulted from the diversion of funds. The court then removed Mrs. Wolk as custodian, appointed a successor custodian and ordered the successor to immediately pay $3,325 to the school for Joshua's tuition and fees. The court also ordered Mrs. Wolk to pay the costs of the action, including $2,100 in attorney fees. An amended entry was filed on May 29, 1998 to correct an error in the name of the institutional successor custodian.
After Mrs. Wolk filed notice of appeal, she filed a Civ.R. 60 (B) motion to vacate. This court remanded the case in order for the probate court to rule on that motion. The probate court could not immediately rule on that motion because a petition to disqualify the probate judge based on alleged bias in the prior proceedings was pending in the Ohio Supreme Court. On May 21, 2001, Mrs. Wolk (hereinafter appellant) notified this court that the probate court's proceedings on remand were complete, allowing this court to address the appeal.
 ASSIGNMENT OF ERROR NUMBER ONE
The first assignment of error alleges:
 "THE PROBATE COURT ABUSED ITS DISCRETION BY REMOVING DEFENDANT-APPELLANT, MARCIA S. WOLK, AS CUSTODIAN OF THE ACCOUNT ESTABLISHED THROUGH THE OHIO GIFTS TO MINORS ACT AND BY ORDERING THAT FUNDS FROM THE ACCOUNT BE USED TO PAY CARDINAL MOONEY HIGH SCHOOL, AND THE COURT FURTHER ABUSED ITS DISCRETION BY MISINTERPRETING THE PLAIN MEANING OF R.C. 1339 ET SEQ."
Under this assignment, appellant states that she handled the account competently. She cites the testimony of an investment broker who stated that the account's stock in Coca-Cola has done well and characterized appellant as a "relatively sophisticated investor." (Tr. 107-109). Appellant also contends that the court erred in refusing to find that the custodial account was intended for college expenses. She again points to the broker's testimony that he thought appellant's "intentions were to have the money put aside for Josh to use for college." (Tr. 106).
Appellant notes that Joshua's father signed a paper in favor of the school, obligating him to pay tuition. She notes his failure to apply for financial aid. She points to R.C. 1339.34 (B), which provides that in expending money for the minor, the custodian may, but need not, consider the duty or ability of any other person to support the minor. This section also states that an expenditure from the account is not a substitute for the obligation of any person to support the minor. Appellant then contends that the court misconstrued this section and complains that the court improperly excluded relevant evidence concerning Joshua's parents' ability to pay the tuition.
In conclusion, she claims that she acted in Joshua's best interests and that there was no justification for the court to remove her as custodian. She urges this court to find that the probate court abused its discretion in removing her, misinterpreting the statute, excluding relevant evidence, and ordering that the tuition be paid.
 LAW ANALYSIS FOR ASSIGNMENT OF ERROR NUMBER ONE
A gift made under the Transfers to Minors Act is irrevocable and conveys to the minor vested legal title to the gift. R.C. 1339.33(A). After the transfer, the gift and its proceeds become known as custodial property. R.C. 1339.31(D). The named custodian holds, manages and invests the custodial property. R.C. 1339.34(A).
As for spending the custodial property, R.C. 1339.34 provides in pertinent part:
 "(B) The custodian shall pay over to the minor for expenditure by the minor, or expend for the use or benefit of the minor, as much of or all of the custodial property as the custodian considers advisable for the use and benefit of the minor in the manner, at the time or times, and to the extent that the custodian in his discretion considers suitable and proper, with or without court order, with or without regard to the duty or ability of the custodian or of any other person to support the minor or his ability to do so, and with or without regard to any other income or property of the minor that may be applicable or available for any purpose. Any payment or expenditure that is made under this division is in addition to, is not a substitute for, and does not affect the obligation of any person to support the minor for whom the payment or expenditure is made."
From this passage, it appears that the custodian has broad discretion in making expenditures and may, but need not, consider various factors in making these expenditures. However, the next division provides:
 "(C) The court, on the petition of a parent or guardian of the minor or of the minor, if he had attained the age of fourteen years, may order the custodian to pay over to the minor for expenditure by him or to expend as much of or all the custodial property as is necessary for the use and benefit of the minor." (Emphasis added).
Thus, the court is the superior custodian who can make determinations of what expenditures are in the best interests of the minor upon petition to the court.
Moreover, certain individuals or the minor who has attained the age of fourteen "may petition the court that, for cause shown in the petition, the custodian be removed and a successor custodian be designated." R.C.1339.37(G). After the custodian attempts to show cause why the relief prayed for should not be granted, the court shall grant any relief that it finds to be in the minor's best interests. R.C. 1339.37(H).
This court reviews the probate court's decision to remove the custodian for abuse of discretion. Cf. Estate of Sammartino v. Bogard (Sept. 16, 1999), Mahoning App. No. 97CA77, unreported, 10 (stating that an order removing a fiduciary, albeit under R.C. 2109.24, is not reversed absent a clear showing of an abuse of discretion). In reviewing the transcript in the case at bar, we find that the probate court soundly exercised its discretion to remove appellant as the custodian. Most importantly, she withdrew assets from the custodial account and placed them in an account in which she had an interest to reimburse herself for past gifts that she made to Joshua. The court found this wrongful deprivation and commingling to be contrary to her duties as a fiduciary. Hence, the court properly removed appellant as custodian.
Due to the propriety of her removal, we need not address her remaining complaints under this assignment of error. Even if her remaining contentions are addressed, they are without merit. For instance, since the court was entitled to remove her as custodian, she has no standing to complain that the successor custodian has been ordered to pay Joshua's tuition. Moreover, the court could find it to be in Joshua's best interests to have his senior year tuition and graduation fees paid out of the custodial account, especially after appellant stated that she would expend funds for this purpose and acted in furtherance of this purpose by selling stock. Regardless, at the beginning of the hearing, appellant consented to the payment of tuition by offering to pay the tuition out of the custodial account with court approval. (Tr. 15-16).
Notwithstanding the fact that Joshua's father signed a paper obligating him to pay tuition, he signed this after appellant assured Joshua that she would pay the tuition out of the account. If tuition was not paid, Joshua would not graduate. It would thus be in Joshua's best interest to have the bill paid out of the account from which the custodian already withdrew money for this purpose. Appellant cites the last sentence of R.C. 1339.34(B), which states that a payment from a custodial account is not a substitute for a parent's obligation to support their child. However, Joshua's father had no obligation of support to Joshua in the form of private school tuition; the obligation was to the school.
Appellant's claimed intention that the account be used for Joshua's college is irrelevant as she herself sold custodial stock to pay high school tuition. Furthermore, there were no express limits on this custodial account. The funds were to be expended in the minor's best interests. The expenditure of funds was not limited to college expenses. Additionally, the court was within its discretion to disregard appellant's statement of intent as the donor and choose to believe that appellant's aunt was the donor as it was her money used to fund the account.
As for appellant's contention that the court erroneously excluded evidence on Joshua's parents' ability to pay, appellant's attorney brought out on cross-examination that Joshua's father paid for him to go to other private schools such as Akiva Academy, St. Charles and the freshman year at Cardinal Mooney High School. Although, he testified that he had difficulty paying these bills. (Tr. 70). Counsel also elicited from Joshua's father that during Joshua's sophomore year, he was having financial difficulties, so appellant offered to assist in paying tuition. (Tr. 72). The court disallowed further questioning on ability to pay in response to objections and a motion in limine.
Any error in the exclusion of evidence regarding the parents' ability to pay tuition was harmless. As aforementioned, the court had before it sufficient reasons to remove appellant as custodian. First, she admitted to commingling and temporarily converting assets. Second, the court heard Joshua testify that he does not feel that he could communicate with appellant in the future. (Tr. 37). Third, Joshua's father testified that appellant said not to call her anymore. We also note that appellant discontinued sending statements about the account to appellee. (Tr. 58, 162).
Additionally, if the custodian is permitted to consider or disregard ability of the parents to pay under R.C. 1339.34, then the court may similarly consider or disregard. Further, appellant claims that she wanted to demonstrate their ability to pay but simultaneously claims that they would have received financial aid had they applied. We should note that Joshua's father testified that he did not apply for financial assistance because he believed that this was for needy students and that since Joshua had a custodial account with more than $25,000, he was not needy. (Tr. 62, 65).
For all of the foregoing reasons, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error provides:
 "THE PROBATE COURT ABUSED ITS DISCRETION BY AWARDING ATTORNEY FEES WHEN ATTORNEY FEES HAD NOT BEEN PRAYED FOR IN THE PETITION, NOR HAD THERE BEEN AN ORAL OR WRITTEN REQUEST MADE FOR ATTORNEY FEES PRIOR TO THE TRIAL, AND REGARDLESS, ATTORNEY FEES WERE NOT WARRANTED IN THIS CASE."
The trial was conducted on April 28, 1998, after which the court proclaimed that appellant acted willfully, arbitrarily and capriciously and advised that it was going to assess Joshua's attorney fees against appellant. On May 15, 1998, Joshua filed a formal motion for attorney fees. A descriptive log of time spent on the case was submitted, totaling 36.15 hours. According to the certificate of service, the motion was mailed to appellant's attorney on May 13. Appellant did not respond to the motion. Thereafter, the court assessed $2,100 in attorney fees by way of its May 28, 1998 judgment entry.
On appeal, appellant makes two arguments regarding the award of fees. First, she contends that the fees were not warranted. Second, she complains that there is no evidence as to proper amount of the fees or explanation of how the court arrived at that amount.
It is well-settled law that if there is no statutory provision for attorney fees, the prevailing party is not entitled to fees under the American rule unless the party against whom the fees are to be assessed is found to have acted in bad faith, vexatiously, wantonly, obdurately or for oppressive reasons. Sharp v. Norfolk W. Ry. Co. (1995),72 Ohio St.3d 307, 314, citing Sorin v. Warrensville Hts. School Dist.Bd. Of Edn. (1976), 46 Ohio St.2d 177, 181. Appellant argues that the trial court abused its discretion in finding that she acted in bad faith. However, this argument is without merit.
The court pointed out that gifts, both the stock in the custodial accounts and the prior payments of tuition, are irrevocable. The court found that appellant intentionally and wrongfully commingled funds in an effort to reimburse herself for past gifts and that she unjustifiably delayed in returning those funds. The court found that she intentionally ignored Joshua's best interests in order to punish his parents. All of this, the court reasonably determined, epitomized bad faith. We find no abuse of discretion.
Appellant also complains that because Joshua failed to seek attorney fees in his original petition, there was no evidence heard at trial on fees. However, it appears that a hearing on attorney fees is not required unless the fees are a sanction for frivolous conduct under R.C. 2323.51
or other statutory section that requires a hearing. See, e.g., Meyers v.Hot Bagels Factory, Inc. (1999), 131 Ohio App.3d 82, 102; Okocka v.Fehrenbacher (1995), 101 Ohio App.3d 309, 321.
Appellant then points out that there is no indication of how the court arrived at the $2,100 figure. Although Joshua's attorney submitted a detailed documentation of his hours spent, totaling 36.15 hours, there was no mention of an hourly rate. The court award results in, but does not specify, an hourly rate of $58.09. Notably, appellant does not argue that this amount is unreasonable. Rather, she impliedly argues that it is unsupported and thus not reviewable.
We have stated that it is the movant's burden to present sufficient evidence of services performed and the reasonable value thereof.Dombroski v. Dombroski (Sept. 28, 1999), Harrison App. No. 506, unreported. In the case at hand, there is some evidence of services performed, albeit the documentation was not in affidavit form. However, there is no evidence of the value of the services.
Some cases state that where the value of the services is so obviously reasonable, then it may be determined as a matter of law. Brandon/WiantCo v. Teamor (1999), 135 Ohio App.3d 417, 422, citing Frey v. Stegall
(May 2, 1994), Athens App. No. 1586, unreported. Here, there was no objection to the claimed amount of hours spent by Joshua's attorney, and $58.09 per hour may appear reasonable, if not low.
However, the Ohio Supreme Court requires the trial court to explain how it reached its figure. Bittner v. Tri-County Toyota, Inc. (1991),58 Ohio St.3d 143, 145-146. In Bittner, the Court was reviewing the reasonableness of a fee award made pursuant to R.C. 1345.09(F)(2), which states that a reasonable attorney fee limited to work reasonably performed may be awarded against a supplier who knowingly violates the deceptive sales practices act. The Court held that the starting point is the number of hours reasonably expended multiplied by a reasonable hourly rate. Id. at 145 (noting that the attorneys submitted well-documented time reports and testified about their hourly rate). However, the Court stated that this multiplication of reasonable hours and rate does not end the inquiry. The court may modify the product upward or downward based upon its consideration of the factors listed in DR 2-106(B). These factors are: time and labor involved; novelty and difficulty of the issues; professional skill required; inability to accept other cases; fee customarily charged; amount at stake and results obtained; time limitations; nature of client relationship; experience, reputation and ability of attorney; and whether the fee is fixed or contingent.
The Court noted that the trial court has the discretion to award a reasonable fee after determining the weight to give any relevant factors. Id. at 146 (stating that unless the fee is so high or low that its shocks the conscience, an appellate court will not interfere and pointing out that the trial court occupies the best position from which to determine the value of the services of those who tried the case before it). Nevertheless, the Court still remanded the fee award due to the fact that it was "not possible to determine what factors the court considered or the weight, if any, it placed on those factors." Id. (holding that when a court awards fees under R.C. 1345.09(F)(2), it must state the basis for the fee determination so that the appellate court can conduct a meaningful review, even though that statute does not require such an express finding).[3] See, also, Hensley v. Eckerhart (1983),461 U.S. 424, 437 (stating that it is important for the court to provide a concise but clear explanation of its reasons for a fee award); Christev. GMS Mgmt. Co., Inc. (2000), 88 Ohio St.3d 376, 378 (reminding that the factors outlined in Bittner must be considered when calculating attorney fees); Hutchinson v. J.C. Penney Cas. Ins. Co. (1985), 17 Ohio St.3d 195,200 (directing the trial court on remand to consider the factors in calculating the amount of reasonable attorney fees); Whitaker v. Estateof Whitaker (1995), 105 Ohio App.3d 46, 57 (remanding where the record does not reflect that the factors were considered).
Applying the foregoing criteria to the matter before us, it is apparent that the record does not contain sufficient facts for this court to review the probate court's decision to order attorney fees. In fact, the only thing we are able to determine with certainty is the amount awarded, i.e., $2,100. We do not, however, have anything in the record that indicates how the court arrived at that figure other than speculation that the trial court might have adjusted the submitted hours, or might have assigned to the submitted hours an hourly rate of $58.09, or possibly used some other criteria known only to the probate court.
Therefore, we have no alternative but to remand the matter back to the probate court for it to provide its reasoning for determining that an award of attorney fees is justified. Moreover, said court must also set forth its methodology in determining the amount of attorney fees with sufficient specificity so as to satisfy the criteria contemplated byBittner.
 ASSIGNMENT OF ERROR NUMBER THREE
Appellant's third assignment of error alleges:
 "DEFENDANT-APPELLANT, MARCIA S. WOLK, WAS PREJUDICED BY THE PROBATE COURT'S APPROVAL OF PLAINTIFF-APPELLEE'S PROPOSED JUDGMENT ENTRY, AS NEITHER SHE NOR HER COUNSEL RECEIVED A COPY OF THE JUDGMENT ENTRY AS REQUIRED BY LOCAL RULE 5(G), AND SHE DID NOT HAVE THE OPPORTUNITY TO OBJECT OR OTHERWISE RESPOND TO SAID JUDGMENT ENTRY."
Pursuant to Loc.R. 5(G), unless a judgment entry is filed by the court in a civil case, counsel for the party in whose favor an order is entered shall prepare a judgment entry and submit it to opposing counsel for objections. Appellant complains that this rule was violated when her attorney was not given an opportunity to object to the proposed judgment entry which appellant believes is the same as the court's May 28, 1998 judgment entry. Appellant then alleges that this violation was prejudicial.
First, Joshua's attorney admits to filing a proposed judgment entry without submitting the proposal to opposing counsel as it was his understanding that the rule was inapplicable in probate cases. We agree that Loc.R. 5(G) does not apply to the probate court. This rule deals with the assignment of civil cases for trial among the judges, the marking of exhibits, and judgment entries. The probate court is not assigned civil cases in the manner set forth in this rule. In fact, the local rules are separated into sections, and the rules dealing with probate court begin at Loc.R. 18.1. Thereafter, Loc.R. 24.1 specifies that motions and accompanying judgment entries shall be printed in ink or typed and correctly captioned. It then states that judgment entries accompanying motions shall be prepared on a separate document from that of the motion. This rule does not mention submission of the proposed judgment entry to the opposing party with an opportunity to file objections. Hence, it appears that the procedure set forth in Loc.R. 5(G) is inapplicable to probate proceedings.
Alternatively, Joshua's attorney states that any noncompliance with the rule is irrelevant because the probate court did not use the proposed judgment entry; rather, the court prepared its own judgment entry. The file does not contain Joshua's proposed judgment entry to compare against the one filed by the court. We note that the font in the filed judgment entry is different from all motions filed by Joshua. Moreover, a separate proposed judgment entry filed by Joshua regarding attorney fees left a blank for the court to fill in. However, the main May 28, 1998 judgment entry deciding the entire case awarded $2,100 in attorney fees without any evidence that a blank was filled in. As such, it appears that the judgment entry at issue was prepared by the court, making Loc.R. 5(G) inapplicable.
Regardless, any allegations of prejudice under this assignment of error are without merit. Appellant states that had she been given the opportunity to object to the judgment entry she would have contested the amount of attorney fees. However, the amount of fees was addressed supra
under the prior assignment of error.
Lastly, appellant claims that the judgment entry does not accurately reflect the court's pronouncement from the bench that an accounting is unnecessary. However, the court did not so state. The court stated that an independent accounting was unnecessary as to the history of the custodial account. The court opined that the testimony established that the accounting was current less what may have been lost in the transfer of the money from the custodial account to the decedent's account. (Tr. 210). Contrary to appellant's assertions, the court's judgment entry ordering an amended accounting to answer for any loss caused by appellant's diversion of funds is not inconsistent with its prior oral pronouncement. See R.C. 1339.35(E) (covering reimbursement from custodian to beneficiary for losses due to bad faith, intentional wrongdoing or gross negligence). Accordingly, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER FOUR
Appellant's fourth and final assignment of error alleges:
 "DEFENDANT-APPELLANT WAS PREJUDICED AND DID NOT RECEIVE AN IMPARTIAL AND UNBIASED REVIEW OF THE PETITION FILED AGAINST HER, DUE TO JUDGE TIMOTHY MALONEY AND OPPOSING COUNSEL'S FAILURE TO DISCLOSE THEIR RELATIONSHIP TO DEFENDANT-APPELLANT OR HER COUNSEL IN THE BEGINNING OF THE PROCEEDINGS."
Appellant states that in September 1998, after the appeal had been filed, she discovered that Joshua's counsel, Mark Belinky, was involved with the probate judge's campaign.
In support, appellant attaches an affidavit of a woman who claims that Attorney Belinky held himself out to be Judge Maloney's campaign manager. Appellant contends that the judge should have disclosed this relationship pursuant to Cannon 3(E)(1)(a) of the Code of Judicial Conduct. Appellant then states that she was prejudiced due to the court's lack of impartiality throughout the proceedings. She states the following examples of prejudice: (1) the judge excluded evidence on Joshua's parents' ability to pay tuition; (2) the judge stated from the bench that he would award attorney fees even though Joshua had not yet sought attorney fees; (3) appellant never received the proposed judgment entry; (4) it is unknown how the court arrived at the amount of attorney fees; (5) the fact that the court ordered that appellant be personally served with certain court orders by the sheriff's department shows an intent to harass; and (6) the court's attitude toward appellant's counsel was biased at a post-judgment hearing on August 10, 1998.
In response, Attorney Belinky states that this court should sanction appellant and her attorney for making false allegations against Judge Maloney. He states that he was not the campaign manager. He also notes that the affidavit was submitted for the first time on appeal.
Initially, we should note that there is no "rule that mandates recusal or disqualification of a judge merely because a party to or lawyer in the underlying case campaigned for or against the judge." In reDisqualification of Celebrezze (1991), 74 Ohio St.3d 1231, 1232. "The ability of a judge to preside fairly and impartially in that situation is best determined on a case-by-case basis." Id.
However, the procedure for this type of disqualification is by affidavit of disqualification to the Ohio Supreme Court's Chief Justice.Id. See, also, Section 5(C), Article IV, Ohio Constitution. An appellate court is without jurisdiction to pass upon issues of disqualification or to void a judgment of the trial court on that basis. Beer v. Griffith
(1978), 54 Ohio St.2d 440, 441-442.
In fact, appellant filed an affidavit of disqualification in the Supreme Court after we remanded this case for a ruling on the Civ.R. 60(B) motion to vacate. On July 6, 2000, the Chief Justice of the Ohio Supreme Court denied appellant's request to disqualify Judge Maloney. Inre Disqualification of Maloney (2000), 91 Ohio St.3d 1204 . That opinion reiterated how an attorney's membership on a judge's campaign committee and campaign contributions do not in themselves mandate disqualification. That opinion also found no support in the record for the allegation that Attorney Belinky served as campaign manager or any other leadership role for Judge Maloney. Finally, the Court held that even if the campaign manager allegations were true, there is no evidence of bias, prejudice or appearance of impropriety in existence in the probate case of Wolk v. Wolk. Id. (noting that dissatisfaction of the judge's ruling in the original Wolk case is not grounds for disqualifying the judge for purposes of the Civ.R.60(B) motion). Because we may not second-guess the Chief Justice's review of the transcript on issues of bias, this assignment of error is overruled.
For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part and this cause is remanded on the issue of attorney fees.
DONOFRIO, J. and WAITE, J., concurs.
[1] Note that a custodial account lasts until the minor turns twenty-one. Hence, on August 5, 2001, Joshua's twenty-first birthday, many of the issues herein became moot individually but must be addressed as the conclusions under each are relevant to attorney fees.
[2] Although Mrs. Wolk claims to have initiated the gift to Joshua, the original source of the assets was Mrs. Wolk's aunt, Sally Finklestein, who named Mrs. Wolk on a joint account and gave her power of attorney over other assets.
[3] One may attempt to argue that Bittner is facially distinguishable from the case at hand, since Bittner sought attorney fees under a specific statute allowing for these fees, but Joshua is seeking fees based on the uncodified American bad faith rule. The statute utilized inBittner does not require the trial court to demonstrate consideration of the relevant factors. Rather, the Supreme Court adopted this rule for reviewing the reasonableness of attorney fees from case law. As such,Bittner is not substantively distinguishable from the present case. Thus, the judicially-created rule in Bittner, which requires the record to reflect consideration of the factors in evaluating the reasonableness of attorney fees, is applicable herein.