The **LINCOLN ELECTRIC COMPANY, Plaintiff,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, et al., Defendants.**

No. 96–CV–0537.

United States District Court, N.D. Ohio, Eastern Division.

Feb. 3, 1998.

Robert S. Walker, Brian F. Toohey, Stephan Isaiah Voudris, Mark J. Andreini, Jones, Day, Reavis & Pogue, Cleveland, Michael H. Ginsberg, Peter D. Laun, Jones, Day, Reavis & Pogue, Pittsburgh, PA, for Plaintiff.

James C. Zacharski, Bethany K. Culp, Thomas P. Kane, Elliot M. Flies, Oppenheimer, Wolff & Donnelly, St. Paul, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER

GWIN, District Judge.

On August 1, 1997, Defendants St. Paul Fire and Marine Insurance Co. and The St. Paul Companies, Inc. (collectively "St. Paul"), filed a motion for partial summary judgment against Plaintiff Lincoln Electric Company [Doc. 131]. The Plaintiff filed its opposition on August 29, 1997 [Doc. 140]. In their motion, Defendants ask the Court to construe certain language relating to insurance policy deductibles as set forth in a "$25,-000.00 Deductible Agreement" entered by the parties herein for the years 1979 through 1985. For the reasons that follow, the Court denies Defendants' motion for partial summary judgment.

### I

Plaintiff Lincoln Electric manufactures welding products. From approximately 1973 to 1995, St. Paul issued to Lincoln Electric primary general liability insurance policies, which included product liability coverage. Beginning in the early 1970s, Lincoln Electric was named as a defendant in lawsuits throughout the country whereby plaintiffs alleged injury resulting from long-term exposure to fumes generated by welding products manufactured by Lincoln.[1] By the mid–1970s, both St. Paul and Lincoln expressed concern about Lincoln's potential exposure on these claims.

For the period 1973 to 1979, Lincoln's insurance policies with St. Paul required Lincoln to pay a $5,000 per claim deductible. However, in 1979, St. Paul offered to renew Lincoln's coverage *only* if Lincoln agreed to increase its share of the risk associated with claims presented *to St. Paul on or after August 1, 1979*. The parties memorialized renewal of Lincoln's coverage on this basis in the "Deductible Agreement" endorsements presently at issue.

The "$25,000 Deductible Agreement" at issue reads as follows:

In consideration of the Company agreeing to provide coverage to the Insured for this policy period, the Insured agrees to pay the following for:

Bodily injury liability arising out of inhalation of toxic chemicals, including, but not limited to fumes and gases, which are caused from welding products manufactured, sold, handled, or distributed by the insured or the insured's vendors on any and all claims first presented to the Company on or after August 1, 1979, regardless of when the claim first arose. ...$25,000 deductible per claim applicable to the payment of the claim and allocated claims expense. Allocated claims expense shall not include any expenses incurred by Insured except as agreed to by the Company.

---

1. Lincoln estimates that it has been named as a defendant in approximately 2,000 such lawsuits.

Under the agreement, the Defendants argue for construing the terms strictly so to require Lincoln Electric to pay a $25,000 deductible on all welding fumes claims presented on or after August 1, 1979, "regardless of when the claim first arose." In this regard, Defendants St. Paul say that they intended the agreement to have retroactive effect, thus effectively trumping any previously existing policy deductible created under an earlier (pre–1979) policy.

Plaintiff Lincoln Electric disagrees, contending that the Defendants' position does not properly reflect the parties' intentions or understanding of the agreement when they entered into it in 1979. Rather, Lincoln Electric argues that the "$25,000 Deductible Agreement" requires it only to pay the higher $25,000 deductible on any claim filed on or after August 1, 1979. In this respect, Plaintiff maintains the previously existing insurance policies (such as the 1973–1979 $5,000 deductible policies) are not subject to the "$25,000 Deductible Agreement." [2]

## II

The Defendants say they are entitled to partial summary judgment for the following reasons: (1) in 1979, Plaintiff Lincoln Electric and St. Paul Fire and Marine Insurance Co. entered a binding and independent insurance agreement which obligated Lincoln to pay a $25,000 deductible for each welding fumes claim first presented to St. Paul on or after August 1, 1979; (2) this "specifically negotiated agreement" was independent from the standard terms and conditions of the policies previously issued by St. Paul to Lincoln Electric; (3) the "$25,000 Deductible Agreement was attached to each insurance policy that St. Paul to Lincoln from August 1, 1979 through August 1, 1985"; (4) the plain language of the agreement is explicit and clearly mandates that any welding claim, regardless of when the claim arose, is subject to the $25,000 deductible if presented to St. Paul after August 1, 1979, and until August 1, 1985, when such claims became subject to a $50,000 deductible; and (5) that the terms of the Deductible Agreement require Plaintiff Lincoln Electric to pay the $25,000 deductible with respect to each individual person's claim.

Defendant St. Paul Fire and Marine Insurance Company further says that it, and not The St. Paul Companies, Inc., is the issuer of the policies here at issue. As such, Defendants contend that The St. Paul Companies, Inc. is not a proper party defendant. [3]

## III

Fed.R.Civ.P. 56(c) states the procedure for granting summary judgment and says in pertinent part:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (1987); *SEC v. Blavin*, 760 F.2d 706, 710 (6th Cir.1985). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *60 Ivy*

**2.** The parties agree that the Deductible Agreement is the effective agreement to be used in handling the welding fumes claims that were first presented to St. Paul after August 1, 1979. Effective August 1, 1985, the parties renegotiated the Deductible Agreement to reflect that all claims first presented on or after August 1, 1985 were subject to a $50,000 per claim deductible, regardless of when or under which policy the claim first arose.

**3.** Defendants note in their motion for summary judgment that the insurance policies at issue were issued by St. Paul Fire and Marine and not by The St. Paul Companies, Inc. Defendants contend that The St. Paul Companies, Inc., is not an insurance company and is not a proper defendant in this case. Defendants further state that this motion is brought on behalf of St. Paul Fire and Marine as an entity that issued the policies, and on behalf of The St. Paul Companies, Inc., without the later waiving its right to argue that it is not a proper party defendant.

*Street Corp.,* 822 F.2d at 1435. Not every factual dispute between the parties will prevent summary judgment. Rather, the disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[4]

The dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the non-moving party. *Id.* 477 U.S. at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *60 Ivy Street,* 822 F.2d at 1435 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). See also *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Thus, the judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, and not to judge the evidence and make findings of fact.[5]

## IV

■ The Sixth Circuit has clearly held firm to the traditional rules of construction when interpreting insurance contracts. When interpreting the plain meaning of an insurance contract or policy, "the contract should be read as a whole and each word given its appropriate meaning." *Burdett Oxygen Co. v. Employers Surplus Lines Ins. Co.,* 419 F.2d 247, 249 (6th Cir.1969).[6] Furthermore, a court "must adopt the construction of the insurance contract which most nearly corresponds with the intention of the parties as ascertained from the words employed by them in their plain, ordinary and usual meaning." *River Servs. Co. v. Hartford Accident and Indem. Co.,* 449 F.Supp. 622, 626 (N.D.Ohio 1977) (citing *Essex House v. St. Paul Fire & Marine Ins. Co.,* 404 F.Supp. 978 (S.D.Ohio 1975)). It is a well-recognized rule of construction that the terms of an insurance policy shall be construed in the plain, ordinary, and popular sense of the language and words used. It is implicit in this rule of construction that a court should not read ambiguity, doubt, and equivocation into words of common meaning and understanding. *Elston–Richards Storage Co. v. Indemnity Ins. Co. of North America,* 194 F.Supp. 673, 679 (W.D.Mich. 1960). See also *Bergholm v. Peoria Life Ins. Co.,* 284 U.S. 489, 492, 52 S.Ct. 230, 76 L.Ed. 416 (1932); *Sterneck v. Equitable Life Ins. Co. of Iowa,* 237 F.2d 626, 629 (8th Cir.1956).

It is also well-recognized that in cases of ambiguity or doubt as to the meaning of language used in an insurance policy, as is the case here, the contract should be construed to the favor of the insured, and that exceptions to the liability provided for in the policy are to be construed against the insurer. *Elston–Richards,* 194 F.Supp. at 679 *(citing Aschenbrenner v. United States Fidelity & Guaranty Co.,* 292 U.S. 80, 85, 54 S.Ct. 590, 78 L.Ed. 1137 (1934)); *Fireman's Fund Insurance Company of San Francisco v. Hanley,* 252 F.2d 780, 785–86 (6th Cir. 1958).

---

**4.** In *Anderson,* the Supreme Court described the requirement of "materiality" as follows:

This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. *Id.* 477 U.S. at 248.

**5.** "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *60 Ivy Street,* 822 F.2d at 1436 (quoting *Anderson,* 477 U.S. at 249).

**6.** See also *American Ins. Co. v. L.H. Sowles Co.,* 628 F.2d 967 (6th Cir.1980)(per curiam); *Gibbons v. Metropolitan Life Ins. Co.,* 62 Ohio App. 280, 23 N.E.2d 662 (8th Dist.1938), *aff'd,* 135 Ohio St. 481, 21 N.E.2d 588 (1939).

The rules of construction under Ohio law are similar. In Ohio, insurance contracts must be construed under the same rules as other written contracts. *Affiliated FM Ins. Co. v. Owens–Corning Fiberglas Corp.*, No. 3:96CV7594, 1992 WL 404399 (N.D.Ohio, Sept.17, 1992) (unreported); *Universal Underwriters Ins. Co. v. Shuff*, 67 Ohio St.2d 172, 423 N.E.2d 417 (1981). Ohio case law also follows the central cannon of insurance contract construction wherein language "reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." *Hutchinson v. J.C. Penney Cas. Ins. Co.*, 17 Ohio St.3d 195, 478 N.E.2d 1000 (1985) (syllabus at ¶ 1) (citing *Buckeye Union Ins. Co. v. Price*, 39 Ohio St.2d 95, 313 N.E.2d 844 (1974), *app'd and followed*).[7]

 In applying these rules, it is well understood that a critical rule is that which stops a court from rewriting the contract when the intent of the parties is evident. Thus, if the language of the policy's provisions is clear and unambiguous, a court may not "resort to construction of that language." *Karabin v. State Auto. Mut. Ins. Co.*, 10 Ohio St.3d 163, 167, 462 N.E.2d 403 (1984).[8] However, in cases where the wording of an insurance contract or policy is doubtful or ambiguous, the contract is construed in a manner most favorable to the insured. *Burdett*, 419 F.2d at 248.[9]

Ambiguity is said to exist "only where a term cannot be determined from the four corners of the agreement or where contract language is susceptible to two or more reasonable interpretations." *Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641, 647 (6th Cir.1991) (holding that when relevant contract language is ambiguous, interpretation is turned over to the fact-finder) (citing *Bahamas Agr. Indus. Ltd. v. Riley Stoker Corp.*, 526 F.2d 1174, 1179 (6th Cir.1975)).[10]

## V

 In the instant case, it is evident that the intention of the parties is unclear. Here, the Defendants seek a strict interpretation of the terms "regardless of when the claim first arose," arguing for retroactive application of the $25,000 deductible to any welding fume claim arising prior to August 1, 1979. Conversely, Plaintiff Lincoln Electric seeks a less stringent interpretation, arguing that the $25,000 deductible applies only to claims "presented after August 1, 1979." There is no reference to the term "retroactive" anywhere in the "$25,000 Deductible Agreement."

Although both views are reasonable interpretations of the provision at issue, because

---

7. See also *State Farm Fire & Casualty Co. v. Hiermer*, 720 F.Supp. 1310 (S.D.Ohio 1988), *aff'd without op.*, 884 F.2d 580 (6th Cir.1989); *American Ins. Co. v. L.H. Sowles Co.*, 628 F.2d 967 (6th Cir.1980)(per curiam).

8. In *Tomlinson v. Skolnik*, 44 Ohio St.3d 11, 12, 540 N.E.2d 716 (1989), the Supreme Court of Ohio expounded upon this rule, stating:

> ... Thus, in reviewing an insurance policy, words and phrases used therein "must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined."

(quoting *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167–168, 436 N.E.2d 1347 (1982)).

9. In *Burdett*, the Sixth Circuit outlined the rationale for this rule as follows:

> The basis for this rule is that the insurer—who formulates the insurance contract and proffers

it to the insured for the ostensible benefit of the insured in the event of loss—is responsible for the language employed. Furthermore, the purpose of the contract being to provide insurance coverage, an interpretation of doubtful terms which construes the language to provide such coverage tends to effectuate good faith intent of the contracting parties.

*Id.* at 248–59 (citing *Munchick v. Fidelity & Casualty Co. of N.Y.*, 2 Ohio St.2d 303, 209 N.E.2d 167 (1965), and *Peterson v. Nationwide Mutual Ins. Co.*, 175 Ohio St. 551, 197 N.E.2d 194 (1964)). See also *Chavers v. St. Paul Fire & Marine Ins. Co.*, 295 F.2d 812 (6th Cir.1961).

10. *Affiliated FM Ins. Co. v. Owens–Corning Fiberglas Corp.*, No. 3:96CV7594, 1992 WL 404399, at *3 (N.D.Ohio, Sept.17, 1992) (unreported) (stating that "[a]mbiguity exists where terms or phrases given an ordinary and usual meaning are capable of an alternative meaning"). See also *Munchick v. Fidelity & Casualty Co.*, 2 Ohio St.2d 303, 209 N.E.2d 167 (1965); *Clements v. Aetna Casualty & Sur. Co.*, 15 Ohio Misc. 252, 236 N.E.2d 799 (1968).

# 1136

it is appears that the "$25,000 Deductible Agreement" fails to represent the proper intentions of each party, the matter must be submitted to a jury. The Supreme Court of Ohio has clearly stated that "the matter of intent is a question of fact to be decided by the trier-of-fact." *First Nat'l Bank of Toledo v. Martenies*, No. L–89–251, 1989 WL 111762, at *2 (Ohio St., Sept. 29, 1989) (unpublished) (citing *Citizens State Bank v. Richart*, 16 Ohio App.3d 445, 446, 476 N.E.2d 383 (1st Dist.1984)).

█ Upon review of the record as a whole, the Court concludes that there is not sufficient evidence such that a reasonable jury could find that the parties intended the "$25,000 Deductible Agreement" to have retroactive effect. Nor does the Court find that there is sufficient evidence to conclude that the coverages and deductibles created by previously existing (pre–1979) insurance contracts were intended by the parties to be disregarded and replaced by the provisions of the "$25,000 Deductible Agreement." Where there are two fairly reasonable interpretations of the situation or where the proper interpretation of a contract requires a determination of credibility, summary disposition is inappropriate.[11]

For the reasons set forth herein, the Court denies Defendants motion for partial summary judgment.

IT IS SO ORDERED.

---

11. *See Rowe v. Montgomery Ward & Co., Inc.*, 437 Mich. 627, 639, n. 5, 473 N.W.2d 268 (1991), where the Supreme Court of Michigan recounted the instruction of Corbin. In the 1991 supplement to S 554A, p. 274, Professor Kaufman observes:

> Corbin's assertion that all questions of interpretation are essentially factual was not intended to destroy that rule. What Corbin meant was that even where a judge is to decide on a particular question of interpretation, he is still obliged to treat the question as one of fact. That is, he is still obliged to hold a factual hearing, he is obliged to take evidence, to allow cross-examination, to inquire into the surrounding circumstances, the situations and prior communications of the parties, and the like. (emphasis in original).