CASEY, APPELLEE, *v.* CALHOUN; ST. PAUL FIRE & MARINE INSURANCE COMPANY, APPELLANT.

(No. 52399—Decided November 9, 1987.)

*Craig Spangenberg,* for appellee.
*James W. Barnhouse,* for appellant.

PARRINO, J. Supplemental defendant-insurer appeals from the trial court's order that the insurer pay the punitive damage award entered against its insured in a defamation action, and the interest accrued. The insurer claims (a) that public policy does not allow insurance coverage for punitive damages and interest on a punitive damage award, and (b) that the terms of the instant insurance policy do not cover the punitive damages and interest. The first assignment of error has merit and we reverse the trial court's order.

## I

St. Paul Fire & Marine Insurance Company (insurer) issued to Crede Calhoun a "personal catastrophe policy" which indemnified the insured "for all sums which the Insured shall be legally obligated to pay as damages and expenses, * * * on account of * * * personal injuries * * *." "Personal injuries" included the intentional torts of false imprisonment, malicious prosecution, and invasion of privacy, as well as slander and other circumstances.

During the policy period, Calhoun made remarks which were allegedly slanderous of appellee, Patrick Casey. Casey brought a defamation action against Calhoun which resulted in a judgment in favor of the plaintiff in the amount of $15,403 in compensatory damages and $10,000 in punitive damages. The insurer defended the suit at trial and brought an appeal to this court on behalf of Calhoun. We af-

firmed the trial court's decision. *Casey v. Calhoun* (Oct. 9, 1980), Cuyahoga App. No. 41396, unreported. Calhoun then appealed *pro se* to the Supreme Court, but subsequently dismissed the appeal.

The insurer paid the compensatory damages and the interest thereon, but declined to pay the punitive damages and interest accrued. The plaintiff in the original action filed a supplemental petition under R.C. 3929.06 in which he joined the insurer. In his petition filed as a judgment creditor, the plaintiff sought and received an order that the insurer pay the punitive damage award and the interest thereon. The insurer then filed the instant appeal.

## II

In his first assignment of error, the insurer claims that it was contrary to public policy for the trial court to require it to pay punitive damages and interest on those damages assessed against the insured.

Punitive damages are awarded to punish an offender for the wanton, reckless, malicious or oppressive character of the act committed and to deter others from committing similar acts. *Atlantic & Great Western Ry. Co. v. Dunn* (1869), 19 Ohio St. 162, 170; *Saberton v. Greenwald* (1946), 146 Ohio St. 414, 32 O.O. 454, 66 N.E. 2d 224. Unlike compensatory damages, which are given to make whole an injured party, punitive damages are an enhancement of the actual loss, representing a "windfall" to the injured party. But, cf., *Fagot v. Ciravola* (E.D. La. 1978), 445 F. Supp. 342 (in Louisiana, for example, punitives may be compensatory in part).

While some jurisdictions expressly authorize insurance for punitive damages, others construe indemnity contracts to exclude that liability on public policy grounds. See Annotation (1982), 16 A.L.R. 4th 12; 1 Ghiardi & Kircher (1981 and Supp. 1986), Puni-tive Damages: Law and Practice, Chapter 7.

Jurisdictions which consider insurance for punitive damages to be against public policy reason that the culpable tortfeasor must not escape the intended punishment by shifting the burden to an insurance company. Further, they argue that the deterrent effect of punitives is greatly diminished if potential tortfeasors know that they can be indemnified against both compensatory and punitive damages. See, *e.g., Northwestern Natl. Cas. Co. v. McNulty* (C.A. 5, 1962), 307 F. 2d 432; see, generally, 1 Ghiardi & Kirchner, *supra,* at Section 7.13. Cf. *Ranells v. Cleveland* (1975), 41 Ohio St. 2d 1, 7, 70 O.O. 2d 1, 4, 321 N.E. 2d 885, 888. Finally, since the punitive damages are in addition to compensation for the actual loss, there is no countervailing pressure to allow insurance to guarantee that the plaintiff can recover his loss.

The majority of jurisdictions, however, reject these arguments as unpersuasive and inadequate when balanced against other policy concerns. See, *e.g., Lazenby v. Universal Underwriters Ins. Co.* (1964), 214 Tenn. 639, 383 S.W. 2d 1; 1 Ghiardi & Kircher, *supra,* at Section 7.12; *First Natl. Bank of St. Mary's v. Fid. & Deposit Co.* (1977), 283 Md. 228, 232-243, 389 A. 2d 359, 361-267. First, there is no proof that punitives serve to deter the offensive behavior to a greater extent when the wrongdoer is "punished" rather than the insurer. Second, the burden does not wholly shift to the insurer as the potential offender must bear the cost of obtaining protection as must others seeking similar coverage. Clearly, the insurance company does not accept responsibility for a cost that it has not recovered through premiums paid by a specific group of consumers. See, *e.g., Skyline Harvestore Sytems, Inc. v. Centennial Ins. Co.* (Iowa 1983), 331 N.W. 2d 106, 108.

The majority of jurisdictions hold that there is a competing public policy favoring the freedom to contract and the enforcement of insurance contracts generally, which supports the insurance of punitive damages and which is more compelling. See, *e.g., Harris* v. *Racine Cty.* (E.D. Wis. 1981), 512 F. Supp. 1273, 1281. Cf. *Empire Fire & Marine Ins. Co.* v. *Parkview Manor, Inc.* (Feb. 4, 1985), Stark App. No. CA-6453, unreported. Further, the prohibition of insurance for punitives could have an unwanted chilling effect on the exercise of free speech and the exchange of ideas. Cf. *Colson* v. *Lloyd's of London* (Mo. App. 1968), 435 S.W. 2d 42, 47; *Harris, supra; First Natl. Bank, supra.* Finally, a declaration of public policy normally is a function of the legislative branch. *First Natl. Bank, supra.*

Although we might wish to balance the competing policy concerns to side with the majority of jurisdictions which uphold the insurability of punitive damages, we believe that the clear policy of Ohio prohibits such a practice. See, generally, Schumaier & McKinsey, The Insurability of Punitive Damages (March 1, 1986), 72 A.B.A. J. 68.

In *Key* v. *Vattier* (1823), 1 Ohio 132, the Supreme Court said: "[T]he right of making contracts at pleasure is a personal privilege of great value, and ought not to be slightly restrained; but it must be restrained where contracts are attempted against the public law, general policy, or public justice. * * *" *Id.* at 147. Cf. *Lamont Bldg. Co.* v. *Court* (1946), 147 Ohio St. 183, 184-185, 34 O.O. 73, 74, 70 N.E. 2d 447, 448; *John Hancock Mut. Life Ins. Co.* v. *Hicks* (1931), 43 Ohio App. 242, 247, 183 N.E. 93, 95 ("A policy of insurance is a voluntary contract, and may be made upon such terms and conditions as are agreed upon by the parties thereto so long as they are not in conflict with the public policy."). Therefore, the proper question is not whether the importance of a policy prohibiting insuring against one's own culpability outweighs that favoring the "utmost liberty of contracting." Cf. *Twin City Pipe Line Co.* v. *Harding Glass Co.* (1931), 283 U.S. 353, 356-357. Rather, the issue is only whether the contract is "clearly opposed to some policy or principle of law." *Lamont Bldg. Co., supra,* at 185, 34 O.O. at 74, 70 N.E. 2d at 448. We hold that both the legislature and the judiciary have articulated a clear policy against the insurability of punitive damages and that a contract provision which contravenes that policy must be declared void. *Portaro* v. *American Guar. & Liab. Ins. Co.* (N.D. Ohio 1962), 210 F. Supp. 411, 416, affirmed (C.A. 6, 1962), 310 F. 2d 897; *Willowick Towers Investment Co.* v. *General Ins. Co. of America* (Sept. 22, 1980), Lake App. No. 7-239, unreported. But, see, *Empire Fire & Marine Ins. Co., supra.*

The Ohio General Assembly in 1986 amended R.C. 3937.18 to expressly prohibit the payment of punitive damages in uninsured and underinsured motorist coverage. R.C. 3937.18(I). This statute in effect nullified the Supreme Court's decision in *Hutchinson* v. *J.C. Penney Cas. Ins. Co.* (1985), 17 Ohio St. 3d 195, 17 OBR 432, 478 N.E. 2d 1000. In *Hutchinson,* the court held that public policy did not preclude the award of punitive damages under an uninsured motorist insurance provision. *Id.* at paragraph two of the syllabus. The General Assembly, however, very clearly stated its position:

"The General Assembly hereby declares that in the amendment of Section 3937.18 of the Revised Code in Amended House Bill No. 489 * * *, it was assumed that the legal principles opposed to authorization for insurance that would indemnify a person for conduct leading to the award of punitive damages were so well established that

it was unnecessary to negate such an intention." Section 3, Am. S.B. No. 249 (141 Ohio Laws, Part I, 537).

The legislative intent was again demonstrated recently by the Ohio General Assembly with its passage of Am. Sub. H.B. No. 1, which becomes effective January 5, 1988. Contained within its provisions is R.C. 3937.182 (B), which again incorporates the prohibition against punitive damages in uninsured and underinsured motorist coverage as previously expressed in R.C. 3937.18(I) and, in addition, goes on to provide as follows:

"* * * and no other policy of casualty or liability insurance that is covered by sections 3937.01 to 3937.17 of the Revised Code and that is so issued, shall provide coverage for judgments or claims against an insured for punitive or exemplary damages."

It is clear that with the passage of this bill the General Assembly has assumed its role as policymaker and has firmly expressed its intention that an individual must be prohibited from insuring against his own intentional or malicious acts.

The Supreme Court, on the other hand, has not reached the issue of the insurability of punitive damages since *Hutchinson.* However, it should be noted that the court in cases involving intentional torts restated its longstanding belief that "* * * public policy is contrary to insurance against intentional torts." *Wedge Products, Inc.* v. *Hartford Equity Sales Co.* (1987), 31 Ohio St. 3d 65, 67, 31 OBR 180, 181, 509 N.E. 2d 74, 76, citing *Blankenship* v. *Cincinnati Milacron Chemicals* (1982), 69 Ohio St. 2d 608, 615, 23 O.O. 3d 504, 509, 433 N.E. 2d 572, 577, and *Rothman* v. *Metropolitan Cas. Ins. Co.* (1938), 134 Ohio St. 241, 246, 12 O.O. 50, 52, 16 N.E. 2d 417, 420.

In view of the explicit public policy pronouncement contained in R.C. 3937.182(B), the insurance policy at issue cannot be invoked to provide coverage for the payment of a judgment for punitive damages entered against the insured. Both the legislature and judiciary have determined that insuring against punitives is detrimental to the welfare and the morals of the public. Cf. *L'Orange* v. *Medical Protective Co.* (C.A. 6, 1968), 394 F. 2d 57; *Porter* v. *Trustees of Cincinnati Southern Ry.* (1917), 96 Ohio St. 29, 33-34, 117 N.E. 20, 21; *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Kinney* (1916), 95 Ohio St. 64, 67-68, 115 N.E. 505, 507.

Accordingly, we sustain appellant's first assignment of error and reverse the trial court's order that the insurer must pay punitive damages and interest on those damages assessed against the insured.

The insurer argues in its second assignment of error that the terms of the "umbrella policy" did not cover punitive damages and the interest on those damages assessed against the insured. In view of our disposition of the previous assignment, we address this contention solely to satisfy our obligation under App. R. 12(A).

The insurer's "Personal Catastrophe Policy" contained the following clauses:

"Part II — Liability Insuring Agreements

"I. Coverage

"(a) Personal Liability — The *company will indemnify* the Insured *for all sums* which the Insured shall be legally obligated to pay *as damages and expenses * * * on account of*:

"(1) *Personal Injuries* * * *.

"* * *

"Definitions (Applicable Only to Part II)

"2. Personal Injuries: The term *'Personal Injuries'* wherever used herein *shall include* but is not limited to bodily injury, mental injury, mental anguish, shock, sickness, disease, disability, false arrest, false imprisonment, wrongful eviction, wrongful en-

try, detention, malicious prosecution, discrimination, humiliation, libel, *slander, defamation of character* or invasion of rights of privacy." (Emphasis added.)

In reviewing these two clauses we must conclude that it was the clear intent of the parties that punitive damages were to be covered under the "umbrella" policy. Section I(a) unambiguously covers "all sums which the Insured shall be legally obligated to pay as damages * * *." "Punitive damages are a form of damages; when liquidated by judgment [as in this case] they are a 'sum.' " *Norfolk & Western Ry. Co.* v. *Hartford Acc. & Indemn. Co.* (N.D. Ind. 1976), 420 F. Supp. 92, 94, fn. 1; cf. *Empire Fire & Marine Ins. Co., supra.* Furthermore, the policy expressly includes malicious prosecution, libel, slander, and invasion of privacy in its definition of covered "personal injuries." The insurer's acceptance of indemnity for both malicious and intentional acts, therefore, reasonably implies a responsibility for punitive damages as well. See, *e.g., Fagot* v. *Ciravola, supra.*

The insurer argues that the boundaries of liability under the policy are set not only by the coverage provision but also by the limit of liability clause. The latter clause states:

"(a) As respects Coverage (a), the Company's liability shall be only for the ultimate net loss in excess of the 'underlying limits' defined as
"* * *

"(II) the retained limit as defined in the last paragraph of Insuring Agreement II if the *occurrence* is not covered in whole or in part by such underlying policy(ies) or insurance;

"and then up to an amount not exceeding the limit indicated in Item 4(a) of the Declarations as the result of any one *occurrence;* provided that the Company shall not be required to assume any obligation of any underlying insurer, which shall be deemed uncollect-

ible or invalid by reason of bankruptcy or insolvency of such insurer. There is no limit to the number of *occurrences* during the policy period for which claim may be made." (Emphasis added.)

The policy defines "occurrence" as "an accident, involving injurious exposure to conditions which results, during the policy period, in personal injury or property damage neither expected nor intended from the standpoint of the insured." Therefore, St. Paul contends that punitive damages are beyond the limits of its liability as they were not awarded as the result of an "occurrence." Calhoun's actions were not an accident; he acted with (1) the intent to injure another, or (2) the belief that such injury was substantially certain to occur. Cf. *Jones* v. *VIP Development Co.* (1984), 15 Ohio St. 3d 90, 15 OBR 246, 472 N.E. 2d 1046, paragraph one of the syllabus (definition of "intentional tort").

Recently, the Ohio Supreme Court interpreted a nearly identical clause to preclude coverage for intentional torts. *Wedge Products, Inc.* v. *Hartford Equity Sales Co.* (1987), 31 Ohio St. 3d 65, 31 OBR 180, 509 N.E. 2d 74, syllabus. We might accept this as controlling to exclude coverage for punitives also, except that the policy in the instant case contains an express provision which contradicts limiting liability to accidents. In *Wedge Products,* the policy had no provisions expressly covering the insurability of intentional torts. If we apply *Wedge Products* and invoke the "occurrence" definition in the contract to preclude coverage of "intentional" acts, we must render a significant portion of the express coverage unenforceable. Not only is such an outcome generally disfavored, but it would be contrary to the apparent intent of the parties. The insurer expressly agreed to indemnify the insured for intentional acts described in the coverage provision.

We may be able to reconcile coverage for libel with the limitations on liability imposed by the policy's definition of "occurrence." The fault in libel need only amount to negligence when the defamed is other than a public figure and, therefore, libel may be an accidental act. However, express coverage for false imprisonment or malicious prosecution cannot be reconciled with a provision which limits liability to "accidental" acts. Clearly, both torts are defined by an *intentional* act. Cf. *Sayre* v. *Chilcott* (May 16, 1985), Cuyahoga App. No. 48802, unreported (elements of false imprisonment); *Crawford* v. *Euclid Natl. Bank* (1985), 19 Ohio St. 3d 135, 139, 19 OBR 341, 344, 483 N.E. 2d 1168, 1171 (elements of malicious prosecution). We are particularly mindful that it is a fundamental principle of contract law that ambiguities in a contract are resolved against the party preparing the agreement. *Central Realty Co.* v. *Clutter* (1980), 62 Ohio St. 2d 411, 16 O.O. 3d 441, 406 N.E. 2d 515. The insurer was in a position to expressly exclude coverage for punitive damages or to limit its *coverage* to unintentional acts. By its failure to do so and by the inclusion of such broad language describing coverage, it has assumed responsibility for indemnifying the insured for punitive damages.

Therefore, so as to honor the intent of the parties and to prevent a significant portion of the coverage from becoming illusory, we will not recognize the "occurrence" language as placing a limitation on recovery in the case of punitive damages. See, generally, *State, ex rel. Gordon,* v. *Taylor* (1948), 149 Ohio St. 427, 37 O.O. 112, 79 N.E. 2d 127, paragraph two of the syllabus (disfavoring contract interpretation which renders contract illusory or unenforceable); *Allen* v. *Standard Oil Co.* (1982), 2 Ohio St. 3d 122, 2 OBR 671, 443 N.E. 2d 497 (intent binding provided intent is evident and does not render an absurd conclusion).

Finally, we agree with the trial court that the policy requires the insurer to pay the interest accrued on the damage awards. The policy specifically states in Part II, Section II(c) that the Company shall "pay all expenses incurred by the company, all costs taxed against the Insured in any such suit and all interest accruing after entry of judgment until the Company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon * * *."

We overrule the insurer's second assignment of error. Based on our resolution of the first assignment of error, that the contract is unenforceable with respect to punitive damages, however, the insurer cannot be held liable for the punitive damages or the interest accrued thereon.

*Judgment reversed.*

STILLMAN, P.J., and MARTIN, J., concur.

THOMAS J. PARRINO, J., and SAUL G. STILLMAN, P.J., retired, of the Eighth Appellate District, were assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.

WILLIAM J. MARTIN, J., of the Carroll County Court of Common Pleas, sitting by assignment in the Eighth Appellate District.