**THE CORINTHIAN, d.b.a. Corinthian Skilled Nursing Center, Appellee,**

v.

**HARTFORD FIRE INSURANCE COMPANY et al., Appellants.**

[Cite as *The Corinthian v. Hartford Fire Ins. Co.* (2001), 143 Ohio App.3d 392.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 76208.

Decided May 14, 2001.

*Stege & Assoc. Co., L.P.A., Edward Richard Stege* and *Donald J. Richardson,* for appellee.

*Ulmer & Berne, L.L.P.,* and *David L. Lester,* for appellants.

TIMOTHY E. MCMONAGLE, Presiding Judge.

Defendants-appellants, Hartford Fire Insurance Company and Twin City Fire Insurance Company, appeal the judgment of the Cuyahoga County Court of Common Pleas denying their motion for summary judgment and granting the cross-motion of plaintiff-appellee, The Corinthian, for partial summary judgment. For the reasons that follow, we affirm.

In June 1992, in case No. 233118, the estate of Margaret Therese Sprosty (the "Estate") filed suit against Corinthian and Carlos E. Zevallos, M.D., asserting wrongful death and survivor claims on behalf of Margaret·T. Sprosty and her estate. The Estate's complaint alleged that Sprosty had been admitted to Corinthian Skilled Nursing Center on June 3, 1991·for rehabilitation and care after hospitalization, and that Sprosty died on June 24, 1991 as a result of the defendants' negligent care. The Estate later filed an amended complaint, adding a claim for violation of R.C. Chapter 3721 (sometimes referred to as the "Nursing Home Patients' Bill of Rights"). In addition, the Estate sought statutory punitive damages against Corinthian pursuant to R.C. 3721.17(I), which at the time provided that "[t]he court may award punitive damages for violation of [a patient's rights under Chapter 3721]." The provision had been construed to allow for an award of punitive damages without the common-law showing of actual malice.[1]

The Sprosty case was tried to a jury in June 1994. The jury returned a verdict for the Estate, awarded compensatory damages in the amount of $400,000 and found Corinthian liable for punitive damages. Pursuant to R.C. 2315.21(C)(2), which provided that the trial judge, rather than the jury, determine the amount of any punitive damages, the trial judge scheduled a separate hearing and awarded punitive damages of $100,000.

---

1. Effective July 7, 1998, the General Assembly amended R.C. 3721.17(I) to require the traditional showing of actual malice in order to recover punitive damages.

The parties appealed to this court, which affirmed the judgment against Corinthian. *Sprosty v. Pearlview, Inc.* (1995), 106 Ohio App.3d 679, 666 N.E.2d 1180. Based on the then just-decided case of *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, however, this court found that the trial court erred when it, rather than the jury, determined the amount of punitive damages. This court reversed the punitive damage award and remanded the case for further proceedings on the Estate's claim for punitive damages. *Id.* at 686, 666 N.E.2d at 1184.

On June 24, 1996, in case No. 310829, Corinthian filed a declaratory judgment action against defendants-appellants, Hartford Fire Insurance Company and Twin City Insurance Company, a Hartford affiliate. Count One of Corinthian's complaint sought a declaratory judgment with respect to coverage for the punitive damages to be awarded against Corinthian. Count Two of Corinthian's complaint alleged that Hartford and Twin City had acted in bad faith in refusing to pay the punitive damage portion of the judgment against Corinthian.

On November 1, 1996, the trial court granted appellants' motion to bifurcate Corinthian's bad-faith claim and stay further proceedings on that claim pending resolution of the coverage claim. Also on November 1, 1996, the trial court entered an order consolidating case Nos. 233118 and 310829.

Subsequently, Hartford and Twin City filed a motion for summary judgment and Corinthian filed a cross-motion for partial summary judgment regarding whether Hartford and Twin City were obligated to indemnify Corinthian with respect to any punitive damage award rendered in the Sprosty case. On December 16, 1997, the trial court denied appellants' motion for summary judgment and granted Corinthian's cross-motion for partial summary judgment.

Thereafter, the Estate filed a motion to intervene. By judgment entry dated March 3, 1999, the trial court granted the motion, accepted the intervenor's complaint and deemed its allegations denied, reaffirmed the trial court's prior ruling denying appellants' motion for summary judgment and granting Corinthian's cross-motion for partial summary judgment and, pursuant to Civ.R. 54(B), determined that its order was final, there being "no just reason for delay."

On March 22, 1999, the trial court dismissed case No. 233118 with prejudice pursuant to a settlement notice filed by the parties. On March 26, 1999, the trial court similarly dismissed Corinthian's bad-faith claim in case No. 310829 with prejudice.

This court subsequently dismissed and then reinstated appellants' appeal. Appellants raise one assignment of error for our review:

"The trial court erred in granting plaintiff's motion for partial summary judgment and in denying defendants' motion for summary judgment."

The award of damages for which Corinthian seeks coverage was made pursuant to former R.C. 3721.17(I), which provided:

"Any resident whose rights under section 3721.10 to 3721.17 of the Revised Code are violated has a cause of action against any person or home committing the violation. The action may be commenced by the resident or by his sponsor on his behalf. The court may award actual and punitive damages for violation of the rights. The court may award to the prevailing party reasonable attorney's fees limited to the work reasonably performed."

Under this version of the statute, punitive damages could be awarded to a nursing home resident upon a showing that the resident received inappropriate or inadequate medical treatment or nursing care, without a showing of intent, malice, willfulness, or recklessness. *Sprosty v. Pearlview, Inc.*, 106 Ohio App.3d at 683, 666 N.E.2d at 1182–1183. The award of punitive damages for which Corinthian seeks coverage was made without any instruction or finding of actual malice. Appellants do not contend that the award of punitive damages was in any way improper.

Appellants assert, however, that pursuant to R.C. 3937.182(B), neither Hartford nor Twin City can be obligated to indemnify Corinthian for any punitive damages awarded in the Sprosty matter. R.C. 3937.182(B) provides:

"No policy of automobile or motor vehicle insurance that is covered by sections 3937.01 to 3937.17 of the Revised Code * * * and that is issued by an insurance company licensed to do business in this state, and no other policy of casualty or liability insurance that is covered by sections 3937.01 to 3937.17 of the Revised Code and is so issued, shall provide coverage for judgments or claims against an insured for punitive or exemplary damages."

Thus, R.C. 3937.182(B) applies to automobile and motor vehicle insurance policies covered by R.C. 3937.01 to 3937.17 and the other types of insurance policies enumerated in R.C. 3937.01. R.C. 3937.01, in turn, provides that "sections 3937.01 to 3937.16 of the Revised Code apply to casualty insurance including fidelity, surety, and guaranty bonds." The statute provides no definition of these terms, however, as appellees conceded in their motion for summary judgment in the lower court. Thus, there is no indication in the statute that it applies to professional health care facility liability insurance such as the policy at issue here.

Even if R.C. 3937.182 applies to the policy at issue, however, it is apparent that R.C. 3937.182 was not designed to cover the unique punitive damages awarded in this case. In *Casey v. Calhoun* (1987), 40 Ohio App.3d 83, 85–86, 531 N.E.2d 1348, 1350–1351, this court reviewed the history surrounding enactment by the General Assembly of R.C. 3937.182. We stated:

"The Ohio General Assembly in 1986 amended R.C. 3937.18 to expressly prohibit the payment of punitive damages in uninsured and underinsured motorist coverage. R.C. 3937.18(I). This statute in effect nullified the Supreme Court's decision in *Hutchinson v. J.C. Penney Cas. Ins. Co.* (1985), 17 Ohio St.3d 195, 17 OBR 432, 478 N.E.2d 1000. In *Hutchinson*, the court held that public policy did not preclude the award of punitive damages under an uninsured motorist insurance provision. *Id.* at paragraph two of the syllabus. The General Assembly, however, very clearly stated its position:

" 'The General Assembly hereby declares that in the amendment of Section 3937.18 of the Revised Code in Amended House Bill No. 489 * * *, it was assumed that the legal principles opposed to authorization for insurance that would indemnify a person for conduct leading to the award of punitive damages were so well established that it was unnecessary to negate such an intention.' Section 3, Am.S.B. No. 249 (141 Ohio Laws, Part I, 537).

"The legislative intent was again demonstrated recently by the Ohio General Assembly with its passage of Am.Sub.H.B. No. 1, which becomes effective January 5, 1988. Contained within its provisions is R.C. 3937.182(B), which again incorporates the prohibition against punitive damages in uninsured and underinsured motorist coverage as previously expressed in R.C. 3937.18(I) and, in addition, goes on to provide as follows:

" '* * * and no other policy of casualty or liability insurance that is covered by sections 3937.01 to 3937.17 of the Revised Code and that is so issued, shall provide coverage for judgments or claims against an insured for punitive or exemplary damages.'

"It is clear that with the passage of this bill the General Assembly has assumed its role as policymaker and has firmly expressed its intention that *an individual must be prohibited from insuring against his own intentional or malicious acts.*" (Emphasis added.)

R.C. 3937.182, therefore, precludes insuring against punitive damages awarded based on individual's malicious, willful, or intentional conduct. It does not, however, preclude coverage for statutory punitive damages awarded without any finding of malice, intent, or ill will. Accordingly, we hold that R.C. 3937.182 does not preclude coverage for Corinthian.

■ To hold otherwise would prevent enforcement of the plain language of the policy, which clearly allows recovery for the statutory punitive damages for which Corinthian is liable. The plain language of Corinthian's insurance policy states that it will pay all damages that the insured is required to pay as a result of a medical incident. The policy states in pertinent part:

"SECTION 1–COVERAGES

"COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILI-TY

"1. Insuring Agreement.

"We will pay those sums that the insured becomes legally obligated to pay as damages because of injury to which this insurance applies. * * * The injury must be caused by a medical incident."

The policy defines the term "medical incident" as:

"4. 'Medical incident' means any act or omission in the furnishing of professional health care services to any person, including:

"* * *

"e. *Failure to comply with any right of a health care facility resident under any state law regulating your business as a resident health care facility.*" (Emphasis added.)

The jury found Corinthian liable for the violation of a state law regulating Corinthian's business as a resident health-care facility, namely, the violation of R.C. 3721.13. Under the plain language of the policy, which does not distinguish between compensatory and punitive damages, appellants clearly and unambiguously contracted to pay Corinthian for all damages from a violation of state law.

The Ohio Nursing Home Patients' Bill of Rights was enacted in 1979, eleven years before the contract at issue here. As early as 1983, the statute was construed to permit recovery of punitive damages without a showing of malice. See *Slagle v. Parkview Manor, Inc.* (Oct. 7, 1983), Stark App. Nos. CA–6155 and CA–6159, unreported, 1983 WL 7079. Moreover, in 1985, the Fifth Appellate District found insurance coverage for such damages. *Empire Fire & Marine Ins. Co. v. Parkview Manor, Inc.* (Feb. 4, 1985), Stark App. No. CA–6453, unreported, 1985 WL 7176. Against this backdrop, appellants drafted a broad policy of coverage for Corinthian that failed to exclude coverage for statutory punitive damages imposed pursuant to R.C. 3721.17(I).

We agree with the observation of the Fifth Appellate District in *Empire Fire & Marine Ins. Co., supra*: "We believe the insurance company's superior position in drafting the insurance contract is noteworthy. If [the insurance company] wanted to exclude its policy from coverage for punitive damages, said damages foreseeable from the explicit language of a statute which applies directly to the insured nursing home, it should have done so."

Appellants argue, however, that they are not liable for the punitive damages even if the language of the contract provides for such coverage because parties to a contract cannot circumvent an unambiguous statutory prohibition. We find this argument unpersuasive. As discussed above, R.C. 3937.182 does not preclude

coverage for statutory punitive damages awarded pursuant to former R.C. 3721.17(I).

Moreover, contrary to appellants' argument, we discern no public policy reason for not covering the damages at issue here, *i.e.,* punitive damages awarded pursuant to former R.C. 3721.17(I), without any showing of intent or malice.

Historically, punitive damages have been awarded for two purposes: to punish the offender "for the wanton, reckless, malicious or oppressive character of the act committed" and to deter future egregious conduct. *Hutchinson v. J.C. Penney Cas. Ins. Co.* (1985), 17 Ohio St.3d 195, 201, 17 OBR 432, 437–438, 478 N.E.2d 1000, 1005–1006 (Wright, J., dissenting); *Casey v. Calhoun,* 40 Ohio App.3d at 84, 531 N.E.2d at 1349. Because the purpose of punitive damages would be frustrated by permitting insurance to indemnify the wrongdoer, Ohio law has disfavored insurance against punitive damages resulting from the insured's own torts. *State Farm Mut. Ins. Co. v. Blevins* (1990), 49 Ohio St.3d 165, 168, 551 N.E.2d 955, 958–959.

The public policy prohibiting the protection of insurance for punitive damages stems from the underlying assumptions that an individual should not be able to escape punishment for his or her intentionally malicious acts and that the deterrent effect of punitive damages would be diminished if tortfeasors can be indemnified against them. *Casey, supra.* These assumptions are not valid, however, where punitive damages are awarded pursuant to statute, without any finding of malice, ill will, or other culpability. "Punitive damages" that are not based on a finding of actual malice or any other state of mind are not punishment in any traditional sense. Likewise, there is little deterrent effect from "punitive damages" awarded without a finding of ill will or malice. Accordingly, indemnification for these special statutory punitive damages does not violate any public policy.

We do not find appellants' reliance on *State Farm Mut. Ins. Co. v. Blevins,* 49 Ohio St.3d 165, 551 N.E.2d 955, persuasive. Our reading of *Blevins* and *Hutchinson,* 17 Ohio St.3d 195, 17 OBR 432, 478 N.E.2d 1000, which *Blevins* overruled in part, indicates that those cases are limited to the issue of whether *uninsured motorist coverage* extends to punitive damages and do not address punitive damages within the context of any other liability policy, such as the professional health care facility liability policy at issue here.

▇ Finally, Hartford argues that it did not issue the insurance policy at issue and therefore cannot be liable to provide coverage. It is not clear, however, who issued the policy. A common declarations page, which identifies the insurer, is missing from the policy attached to the complaint. No policy was attached to

appellants' motion for summary judgment. Accordingly, Hartford was not entitled to summary judgment on this basis.

We hold, therefore, that the trial court properly denied appellants' motion for summary judgment and granted appellee's cross-motion for summary judgment. Appellants' assignment of error is overruled. The judgment is affirmed.

*Judgment affirmed.*

KILBANE, J., concurs.

JAMES D. SWEENEY, J., concurs in part and dissents in part.

JAMES D. SWEENEY, J., concurring in part and dissenting in part.

I agree with the majority's determination with regard to the inapplicability of R.C. 3937.182 for purposes of insurance coverage. However, I respectfully dissent from the majority's "public policy" analysis permitting the indemnification of punitive damages awarded against Corinthian (the insured tortfeasor herein) in the *Sprosty* case pursuant to former R.C. 3721.17(I).

The majority properly recognizes that "Ohio law has long disfavored insurance against punitive damages resulting from the insured's own torts." *State Farm Mut. Ins. Co. v. Blevins* (1990), 49 Ohio St.3d 165, 168, 551 N.E.2d 955, 958. Also, the majority properly iterates the assumptions that support the general preclusion of insurance for punitive damages based on public policy reasons, namely, (1) that a tortfeasor should not be permitted to escape punishment for his/its tortuous acts, and (2) that such damages will deter others from committing similar acts. *Id.; Casey v. Calhoun* (1987), 40 Ohio App.3d 83, 84, 531 N.E.2d 1348, 1349. Having so spoken, the majority then makes the unsupported statement:

"These assumptions are not valid, however, where punitive damages are awarded pursuant to statute, without any finding of malice, ill will, or other culpability. 'Punitive damages' that are not based on a finding of actual malice or any other state of mind are not punishment in any traditional sense. Likewise, there is little deterrent effect from 'punitive damages' awarded without a finding of ill will or malice. Accordingly, indemnification for these special statutory punitive damages does not violate any public policy."

Not "punishment"? "[L]ittle deterrent effect"? If a punitive damage award, whether award based on a finding of malice, etc., or otherwise by statute, is not punishment to the tortfeasor or a deterrent to others from committing similar acts, I ask, What is it, then? This belief by the majority would, I dare say, come as a complete shock to, and not be shared by, any tortfeasor who has to sign a

check or liquidate assets to satisfy such a punitive damages judgment, in addition to satisfying the compensatory damages judgment. Punitive damages are, and have always been, "punishment" apart from the compensatory damages.

I also take issue with the majority's refusal to reliance on *State Farm Mut. Ins. Co. v. Blevins, supra,* with regard to the public policy argument. The majority bases its nonreliance on the fact that *Blevins* involved liability under a casualty policy of uninsured motorist coverage, whereas the insurance in issue herein involved the context of a general liability policy. This facile distinction, while factually correct in its stated form, withers upon closer review of *Blevins.* In *Blevins,* the Supreme Court noted the assumptions undergirding the public policy disfavoring the insuring of punitive damages and also noted that "uninsured motorist coverage insures against the tortious acts and financial irresponsibility of persons other than the insured." *Id.,* 49 Ohio St.3d at 168, 551 N.E.2d at 958. The court concluded that the Blevinses' policy of uninsured motorist coverage did provide coverage for punitive damages and did not run afoul of public policy because the punitive damages, which would be paid to the Blevinses (the insured victim) under that policy, did not insulate the tortfeasor (who was not a Blevins) from the consequences of the tortfeasor's wrongful acts, that the policy was casualty rather than general liability was not the deciding factor, and that the deciding factor was whether the tortfeasor was evading the effect of the punitive damages punishment. Exactly the opposite result occurs with Corinthian (the insured negligent tortfeasor) if the majority's view is applied herein because to invoke coverage for punitive damages, as the majority is wont to do, would insulate Corinthian from its wrongful tortious acts. This flies in the face of the established public policy dealing with disfavoring insurance coverage for punitive damages awarded against a defendant-insured.

Furthermore, the fact that the policy herein is one for liability, not casualty, makes no difference with regard to Ohio's tradition of disfavoring insurance coverage for punitive damage awards. See *Ruffin v. Sawchyn* (1991), 75 Ohio App.3d 511, 517–518, 599 N.E.2d 852, 855–856, citing *Casey v. Calhoun,* 40 Ohio App.3d at 84–86, 531 N.E.2d at 1349–1351 (in *Ruffin,* this appellate court determined that it was against public policy to invoke coverage under a general *liability policy* covering real property for punitive damages awarded against a co-defendant/insured/tortfeasor).

Accordingly, I would reverse and enter judgment in favor of defendants-appellants based on public policy considerations.