OPINION AND JOURNAL ENTRY
On June 14, 2002, this Court entered an Opinion and Journal Entry ("Opinion") reversing the 1999 conviction of Warren M. Stanley ("Appellant") for the aggravated murder of Janina Thompson. We found that the Mahoning County Prosecutor's Office had entered into a non-prosecution agreement with Appellant and that there was no evidence that he had breached the agreement. Based on this, we dismissed the charges against Appellant and discharged him.
On June 21, 2002, the State of Ohio ("Appellee") filed a timely Motion for Reconsideration with this Court. App.R. 26(A) allows any party to file an application for reconsideration, "before the judgment or order of the court has been approved by the court and filed by the court with the clerk for journalization or within ten days after the announcement of the court's decision, whichever is the later."
In its application, Appellee asserts that we failed to consider the entire appellate record in our review of the case. App.R. 26(A) does not provide the appellate courts with specific guidelines to use in reviewing an application for reconsideration. Relevant caselaw interpreting this rule has stated that, "the test generally applied is whether the [application for reconsideration] calls to the attention of the court an obvious error in its decision or raises an issue for the court's consideration that was either not considered at all or was not fully considered by the court when it should have been." State v. Wong
(1994), 97 Ohio App.3d 244, 246, 646 N.E.2d 538.
In response to Appellee's filing, Appellant contends that this Court has no authority to rule on Appellee's motion for reconsideration because Appellee has already filed a further appeal with the Ohio Supreme Court, which has granted a stay of execution of our June 14, 2002, Opinion. S.Ct.Prac.R. II(D)(1) states: "After an appeal is perfected from a court of appeals to the Supreme Court, the court of appeals is divested of jurisdiction, except * * * to rule on an application timely filed with the court of appeals pursuant to App.R. 26, * * *." Thus, this Court does have jurisdiction to rule on Appellee's application.
In order to properly consider Appellee's application for reconsideration, we must review part of the factual and procedural history of this case. Ms. Thompson was murdered on December 6, 1996. She was shot by a .22 caliber pistol. She was also shot with a 9mm pistol, but the bullet from that pistol did not enter her body. The possible suspects were four men, including Appellant, who had been at a party with Ms. Thompson earlier that evening and who had given her a ride after the party. The other suspects were: Antjuan Adkins ("Adkins"), Ed Blackmon ("Blackmon") and Darnell Clark, Jr. Clark is now deceased. Appellant was a juvenile at the time of the murder.
Soon after the murder, Appellant was questioned by the police. As a result of that questioning, Assistant Juvenile Prosecutor Donna McCollum entered into an oral non-prosecution agreement with Appellant. In this agreement, Appellant was required to give the police a formal statement implicating the persons whom the police believed to be the actual murderers, namely, Blackmon and Adkins. Appellant was also required to testify in the trials of those who would eventually be charged with the murder.
Appellant was arrested on January 17, 1997, pursuant to a material witness warrant. A hearing was held on January 23, 1997, in the Mahoning County Court of Common Pleas, Juvenile Division, to determine whether Appellant should continue to be held in custody. The juvenile court judge determined that Appellant would continue to be kept in custody pursuant to his agreement to testify. The transcript of that hearing was part of the record and was considered in this appeal.
On March 7, 1997, Appellant testified in grand jury hearings as part of the criminal proceedings against Adkins and Blackmon. The transcripts of these hearings were not offered to the trial court and were never included in the record on appeal by the parties.
On May 1, 1998, a juvenile complaint was filed against Appellant charging him with one count of aggravated murder. The juvenile court held a probable cause hearing on May 22, 1998, to determine whether the case should be bound over to the general division of the Mahoning County Court of Common Pleas. Adkins testified at the hearing. The case was bound over to the general division of the court that same day. The transcript of this hearing was also part of the record considered in this appeal.
On October 21, 1998, Appellant filed a Motion to Dismiss the indictment due to the existence of a non-prosecution agreement.
On January 13, 1999, the trial court held a hearing on Appellant's motion to dismiss. The motion was denied on January 19, 1999. The transcript of hearing was included in the record and considered on appeal.
Appellant's case went to trial on February 24, 1999. The jury found Appellant guilty of aggravated murder on March 3, 1999. The transcript of Appellant's trial was part of the record on appeal.
Appellee argues in its application that we failed to consider substantial evidence in the record that Appellant breached the non-prosecution agreement. Appellee contends that our failure to consider this evidence is an obvious error. Appellee points to a number of transcripts and other parts of the record to support its argument, which we will review in more detail below. We must note at the outset, however, that: (a) Appellee completely failed to present any argument in its brief relating to whether or not Appellant breached the non-prosecution agreement (see 9/22/2000 Appellee's Brief, pp. 6-10); (b) the assignment of error sustained in our Opinion specifically questioned the correctness of the trial court's finding that Appellant breached the non-prosecution agreement (see 6/6/2000 Appellant's Brief, p. 4); and (c) Appellee's entire rebuttal argument to Appellant's assignment of error involved it's assertion that there was no non-prosecution agreement. Based on the above, Appellee abandoned and waived any and all arguments relating to the issue of whether Appellant did or did not breach the non-prosecution agreement. In basing its entire case on the contention that no agreement not to prosecute Appellant ever existed, Appellee was apparently very confident in its argument to that effect. We ruled otherwise, without benefit of any additional analysis by Appellee concerning Appellant's alleged breach of the non-prosecution agreement. Appellee's position here appears illogical. It can hardly be considered an obvious error on the part of this Court to rule that Appellant did not breach the non-prosecution agreement, when Appellee presented absolutely no analysis of the issue.
Assuming that Appellee had not waived this argument, we must, then, turn to the specific aspects of the evidence that Appellee argues were not considered. Appellee first argues that we failed to consider the February 24 — March 3, 1999, trial transcripts as part of the record on appeal. It is apparent that these trial transcripts were examined as part of our review, in that we cite to the transcripts a number of times in our Opinion. Appellee is correct, however, that we did not rely on the February 24 — March 3, 1999, trial transcript in making our determination on Appellant's assignment of error wherein he discusses the trial court's decision not to grant his motion to dismiss the indictment. The trial court overruled Appellant's Motion to Dismiss on January 19, 1999. It is obvious that any proceedings, evidence, or events which occurred after that date could not and would not have been before the trial court at the time he made this decision and could not have contributed in any way to the decision to overrule the motion. Because Appellant's motion to dismiss did have merit, it should have been sustained rather than overruled on January 19, 1999, and the charges against Appellant should have been dismissed at that time. As there would not have been any subsequent trial transcript had the trial court properly sustained Appellant's motion to dismiss, neither the existence of a subsequent trial transcript, nor the lack of such transcript, has any bearing on our review of Appellant's motion to dismiss the indictment. See, e.g., In re M.D., (1988), 38 Ohio St.3d 149, 151, 527 N.E.2d 286
(the trial transcript was irrelevant to reviewing a pretrial motion to dismiss criminal charges against a juvenile).
Appellee also argues that we failed to consider evidence contained in the May 22, 1998, transcript of the juvenile hearing regarding probable cause to transfer the case to the general division of the court of common pleas. Appellee argues that this transcript somehow "proves" that Appellant lied about the events which occurred on December 6, 1996. Appellee is mistaken that we did not consider the May 22, 1998, transcript in making our decision. Although we were well aware of the existence of the May 22, 1998, transcript and cite to it in our original Opinion, it was largely irrelevant to our review of Appellant's motion to dismiss the indictment.
Appellee's first problem with its reliance on this particular transcript is that there is no indication that Appellee offered the transcript as evidence to rebut Appellant's motion to dismiss. It is clear in our original Opinion that Appellee failed to offer any proof at the hearing on the motion to dismiss as to its allegations that Appellant lied. Although Appellant had the initial burden of proof at that hearing to show there was a non-prosecution agreement, once that was established the burden shifted to Appellee to prove that Appellant breached that agreement. "If a firm agreement has been entered into, the government bears the burden of proving that the defendant failed to satisfy his part of the deal." United States v. Fitch (C.A.6, 1992), 964 F.2d 571, 574; see State v. Pocius (Dec. 11, 1992), 11th Dist. No. 92-L-028. State v.Curry (1976), 49 Ohio App.2d 180, 184, 3 O.O.3d 227, 359 N.E.2d 1379. Appellee had this burden of proof at the January 13, 1999, motion to dismiss hearing. Appellee was well aware of the purpose of hearing, and should have been aware of its burden of proof at this hearing. Appellee apparently assumed that merely accusing Appellant of lying would suffice as proof that he breached the non-prosecution agreement. As we stated in our Opinion, mere accusations that a defendant has lied do not constitute evidence, nor are such accusations proof that a non-prosecution agreement has been breached. See, e.g., Clayborne v. United States (D.C. 2000),751 A.2d 956, 969; Zammit v. Soc. Natl. Bank (1996), 115 Ohio App.3d 543,561, 685 N.E.2d 850; State v. Smith (1991), 73 Ohio App.3d 471, 477,597 N.E.2d 1132.
The second reason we discounted this transcript in our review is that there is no indication that the trial court relied on, or indeed had ever seen, the May 22, 1998, transcript, except for two pages from the transcript attached to a pretrial motion to suppress. The May 22, 1998, transcript recorded a hearing in juvenile court, not a hearing before the judge who ultimately presided over either the pre-trial motion or the criminal trial. Although certain documents were transferred from the juvenile court to the general division when the case was transferred on May 27, 1998, the transcript of the May 22, 1998, hearing was not part of that transfer. The version of the transcript which is included as part of the record on appeal was file-stamped with the date of March 24, 2000, signifying that it was not even prepared until more than a year after Appellant filed his appeal. Therefore, this transcript also does not appear to have been part of the record relied upon by the trial court.
Third, some of the examples of Appellant's supposed lies cited by Appellee, as contained in the transcript of the probable cause hearing, do not rise to the level of a material breach of the non-prosecution agreement. "When the government believes that a defendant has breached the terms of a nonprosecution agreement * * * the government must prove to the court by a preponderance of the evidence that: (1) the defendant breached the agreement, and (2) the breach is sufficiently material to warrant rescission." (Emphasis added.) United States v. Castaneda
(C.A.5, 1998), 162 F.3d 832, 836. A breach is not material, "unless the non-breaching party is deprived of the benefit of the bargain." Castaneda, supra, 162 F.3d at 837. In the instant case, had Appellant contradicted the basic facts he originally gave to the police, namely, that Blackmon and Adkins shot the victim, this contradiction would constitute a material breach of the earlier agreement. Appellee points out that Adkins testified during the probable cause hearing that Appellant expressed anger at the victim and punched the victim in the mouth. Even assuming that Appellant completely contradicted Adkins' testimony, Adkins' comments neither contradict nor support the ultimate issue Appellant agreed to testify to. Therefore, Appellant's allegedly contradictory statements would not amount to a material breach of the non-prosecution agreement.
Even if we briefly assume that Appellee is correct and we should have placed greater weight on the probable cause and trial transcripts in reaching our decision herein, Appellee's application still falls short. Appellee's main argument is that: 1) the testimony of Blackmon and Adkins in those transcripts indicates that Appellant committed the murder; 2) this testimony is proof that Appellant lied when he testified in grand jury proceedings against Blackmon and Adkins; 3) Appellant's lie was that he did not commit the murder; 4) Appellant's conviction for murder is further proof that he lied about who the actual murderer was; 5) these lies amount to a breach of the non-prosecution agreement, and therefore; 6) Appellee has no duty to uphold its part of the non-prosecution agreement. This line of argument is specious at best and patently absurd at worst. Following this argument to its logical conclusion, no criminal defendant could ever depend on a non-prosecution agreement when the state, at any time, could make a better deal with other witnesses and decide that the defendant really did commit the crime, prosecute him for the crime and then use the subsequent trial and conviction as proof that the defendant breached the non-prosecution agreement.
According to Appellee's theory of non-prosecution agreements, the state receives all of the benefit of its non-prosecution agreement, but absolutely none of the responsibilities. According to Appellee's theory, a non-prosecution agreement is nothing more than the state's assertion that it will refrain from prosecuting a defendant only if: (1) the defendant promises to testify that someone else committed the crime; (2) the state does not change its mind about Appellant's innocence; and (3) Appellant can prove, at any time, that he actually is innocent. It is axiomatic that the state has no authority to prosecute innocent people, so the state would not be exchanging anything of value, i.e., would not be exchanging any consideration in making a promise to refrain from prosecuting an innocent defendant. A contract which does not involve some exchange of consideration between the parties is not a contract at all.Nilavar v. Osborn (1998), 127 Ohio App.3d 1, 11, 711 N.E.2d 726. We cannot approve of such an unconscionable system which would allow the state to withdraw from its non-prosecution agreements by proving, for all practical purposes, that the agreements were never enforceable contracts, and were therefore illusory.
A non-prosecution agreement, like a plea bargain, is a contract, "the terms of which necessarily must be interpreted in the light of the parties' reasonable expectations." United States v. Fields (C.A.7, 1985), 766 F.2d 1161, 1168. Appellant could not have reasonably expected his non-prosecution agreement to be nullified by the very fact of testifying in conformity to the agreement. In other words, Appellant could not have reasonably thought that each time he repeated, under oath, that he did not commit the crime, he could be considered to be both performing and breaching the agreement, depending on the momentary whim of the prosecutor's office. Such an agreement would be self-contradictory and irrational. If the state was in doubt as to the truthfulness of Appellant's testimony that someone else killed Thompson, the state should have refrained from entering into the non-prosecution agreement with Appellant. Once such an agreement was entered, however, it can hardly be seen as a breach that Appellant maintained his story consistently.
Courts will attempt to interpret a contract so as to avoid a result which renders the contract illusory or unenforceable. State ex rel.Gordon v. Taylor (1948), 149 Ohio St. 427, 37 O.O. 112, 79 N.E.2d 127, paragraph two of the syllabus; Casey v. Calhoun (1987), 40 Ohio App.3d 83,88, 531 N.E.2d 1348. By initially entering into a non-prosecution agreement with Appellant, we must assume that the juvenile prosecutor believed Appellant's version of the events. The prosecutor believed that Appellant did not commit the murder and that it was actually committed by Adkins and Blackmon. The prosecutor also believed that Appellant's testimony (confirming his prior statement to the police) would be valuable in the state's prosecution of the other suspects. Appellee's belief in the truthfulness and usefulness of Appellant's original assertions to the police became assumptions of the non-prosecution agreement. To state it in contract terms, there was an implied covenant in the agreement that Appellant's initial statement to the police was acceptable and valuable consideration, and that any future testimony in conformity with the initial statement could not be treated as a material breach of the agreement. This construction of the agreement avoids the contradiction inherent in Appellee's interpretation. Both of the parties promised to exchange something of value in return for a benefit, which is the essence of a contract.
Appellee comments in its application for reconsideration that our Opinion "suborns perjury." It is disturbing that Appellee would make this reckless comment, when in fact it was Appellee, through its prosecutor's office, that entered into the agreement with Appellant. Looking at the facts of this case, hindsight tells us that by entering into non-prosecution and plea bargain agreements with all suspects in this matter, the state may have practically guaranteed that there would be perjured testimony in this matter. Subornation of perjury is defined as, "[t]he offense of procuring another to take such a false oath as would constitute perjury in the principal." Black's Law Dictionary (6 Ed. 1990) 1426. If all the defendants in the instant case testified pursuant to their pre-trial agreements, at least one of them must lie, because their agreements with the prosecutor's office essentially required that they implicate the other suspects. Each one of them was required to testify that he did not commit the crime, and yet, one of them clearly did. This untenable situation was created, not in our review and determination, but through a series of decisions made by the state.
Our Opinion in no way supported or condoned the subornation of perjury. In holding that Appellee was bound by the terms of the non-prosecution agreement, we are clearly not holding that Appellee could require Appellant to testify to facts Appellee later believed or determined to be false. Obviously, Appellee had a legal and ethical duty not to allow Appellant to testify if Appellee believed that testimony would be false. State v. Sanders (2001), 92 Ohio St.3d 245, 271,750 N.E.2d 90. Whether or not Appellee could continue to require Appellant to testify in conformity to his prior police statement is entirely separate from the question as to whether Appellee was bound to uphold the promises it made in a non-prosecution agreement.
Appellee has not shown that any obvious error occurred in our Opinion. Appellee has waived any arguments relating to Appellant's alleged breach of the non-prosecution agreement by failing to raise those arguments anywhere in its brief on direct appeal. Even if Appellee had not waived these arguments, its position here is still unsupported in the record. As we stated in our original Opinion, those portions of the record applicable to Appellant's first assignment of error in no way reveal that he breached the agreement. Certain other transcripts Appellee urges this Court to rely on are irrelevant, primarily because they were not before the trial court and could not have been used by that court in its determination, and also because if Appellant was correct, no trial was properly held in this matter. We determined that Appellant was correct. Finally, the fact that Appellant testified in conformity with the non-prosecution agreement cannot be used as proof that he breached the agreement. Based on all the foregoing reasons, Appellee's application for reconsideration is hereby overruled. DeGenaro, J., concurs in judgment only; see concurring in judgment only opinion.
Waite, J., concurs.
Donofrio, J., concurs.
DeGenaro, J., concurs in judgment only; see concurring in judgment only opinion.